[No. 2,578.]

THOMAS H. HANSON *v.* JAMES S. McCUE.

LAW OF UNDERGROUND CURRENTS OF WATER.—Where underground currents of water, flowing in defined channels, are shown to exist, the rules of law which govern the use of similar streams flowing upon the surface of the earth, are applicable to them.

SPRINGS PRESUMED TO BE SUPPLIED BY PERCOLATION.—In a controversy respecting the use of the waters of a spring, where there was nothing to show that it was supplied by any defined flowing stream; *held*, that it must be presumed to be formed by the ordinary percolations of water in the soil.

PERCOLATING WATERS BELONG TO OWNER OF SOIL.—Waters filtrating or percolating in the soil belong to the owner of the freehold—like the rocks and minerals found there; and he may use them as he chooses, free from any usufructuary rights of others.

RIGHTS OF OWNERS OF SPRINGS OF WATER.—Where the owner of a spring of living water, supplied by percolation only, and having no natural channel or outlet, constructed an artificial channel, by means of which he conducted the water over certain intermediate vacant lands to his residence, and a subsequent occupant of a portion of the intermediate land enjoyed the use of the water flowing through the channel for fifteen years; *held*, that such occupant acquired no rights as against the owner of the spring, and could not prevent him from tapping such spring and using all its waters for his own profit.

NO PRESUMPTION OF GRANT OF EASEMENT AGAINST ONE NOT CALLED ON TO COMPLAIN.—Where water, after leaving a spring supplied by percolation alone, was conducted by an artificial channel to premises below and there appropriated; *held*, that as the owner of the spring had no right to

complain of such appropriation below him, the fact that he did not complain for fifteen years and upwards would not create any presumption of a grant of an easement as against him, nor prevent him from using all the water of his spring as he pleased.

REASONS OF PRESUMPTION OF GRANT OF EASEMENT FROM USER FOR LENGTH OF TIME.—The presumption of the grant of an easement, when indulged against a proper party, is because his conduct, in submitting to the use for such a length of time without objection, cannot be accounted for upon any other hypothesis.

APPEAL from the District Court of the Seventh Judicial District, Marin County.

The facts are stated in the opinion of the Court.

The spring therein referred to is situated on the hillside north of the Town of San Rafael, and is usually known as the San Rafael or Dixon Spring. The defendant appealed.

*E. B. Mahon*, for Appellant.

Even if plaintiff had an absolute right to the surface water running in the channel, and if the spring and channel were on plaintiff's land, yet such a state of facts would not entitle him to enjoin defendant from digging for any useful purpose on his (defendant's) own land. How much less can he do so when the spring is on defendant's land, and the grantor of defendant was the maker of the channel; and when plaintiff fails to show a clear right, or, in fact, any right, to the water?

If any easement has been acquired by either of the parties, it is the defendant who has acquired a right, namely: to discharge the water of his ditch and spring upon plaintiff's land. Defendant's grantor was the actor; his estate is the dominant estate, and plaintiff's is the servient estate.

The law of surface streams does not apply to unknown subsurface streams or supplies. All the well-considered, and especially all the recent decisions on the subject are to this effect. (See *Ellis* v. *Duncan,* 21 Barb. 230; *Haldeman* v. *Burkhardt,* 45 Penn. St. 520; *Acton* v. *Blundell,* M. & W.

324; Angell on W. C. 168; *Radcliff's Exrs.* v. *Mayor of Brooklyn,* 4 N. Y. 200; *Trustees of Delhi* v. *Youmans,* 50 Barb. 316.) In the latter case it is decided "that the law controlling the right to subterranean waters is very different from that affecting surface streams. In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed, and controlled to the same extent by the owner."

As to the prescriptive right claimed by plaintiff, it is plain that there can be no prescription without adverse user; and there can be no adverse user without creating a right of action. In the case at bar no right of action accrued to defendant as to the percolations through his land. He could not sue plaintiff, and reciprocally plaintiff cannot sue him. (*Wheatley* v. *Baugh,* 25 Penn. 528.)

*C. T. Botts,* for Respondent.

Both English and American Judges have drawn the distinction between subterranean streams and percolations; but there is much conflict of opinion and contradiction of authorities as to how far a person may sink a well or shaft, or make any other excavation for a useful purpose, if he thereby incidentally divert the filtration or percolation by which his neighbor's well or stream is fed. On one side *Balston* v. *Bensted,* 1 Campbell, 403; *Dickinson* v. *Grand Junction Canal Co.* 7 Exch. 283; and *Wheatley* v. *Baugh,* 25 Penn. St. 528, are leading cases; on the other, *Chasemore* v. *Richards,* 2 H. & N. 186, and *Haldeman* v. *Burkhardt,* 45 Penn. St. 514.

We claim, however, that there has here been a deliberate attempt made—an attempt which the injunction arrested—to divert a superficial stream by cutting off the same stream in its subterranean flow, and this for no other purpose than

that of appropriating the stream itself to defendant's own use. And such being the case, we defy the production of a single authority that would deny us redress. We lay much stress upon the fact that the sole object of the excavation or tunnel made by the defendant was to intercept and appropriate the water of Dixon Spring. Even if the spring were supplied by threads or percolations, there is no authority that will justify such interception and diversion. It is only when the defendant, in the pursuit of some lawful object, as the digging of a well, sinking a mining shaft, and such like, incidentally and undesignedly cuts off the unknown source of supply that any of the authorities hold him harmless. What a farce it would be to say to this defendant: You may not divert this stream by operating directly upon that portion that rises to the surface; but, observing the direction from which the supply comes, you may cut a ditch, or run a tunnel immediately in the rear, that will effect all you may desire; or, if the direction of supply be uncertain, feel for it, cut all around the spring, and when you strike it use it.

By the Court, WALLACE, J.:

This is an action brought by Hanson to restrain the defendant McCue from prosecuting the work of digging a tunnel on the lands of the latter, having for its object the obtaining of water for the purpose of selling the same in the neighboring Town of San Rafael as an article of commerce. A perpetual injunction was decreed, and a motion for a new trial being denied, the case comes here upon appeal.

The defendant McCue is the owner in fee and in possession of certain premises situated in or near the Town of San Rafael, in Marin County, upon which there is a spring of living water having no natural channel or outlet. He deraigns his title through one Timothy Murphy, who owned

the premises as early as the year 1844, when he constructed an artificial channel, by means of which he conducted the waters of the spring along the surface of the earth through a wooden trough, across a dry gulch, for a distance altogether of several hundred yards, in a southwesterly direction, to another lot where he had a growing vineyard, which he by this means irrigated.  This artificial channel, before it reached the vineyard, passed over a considerable tract of land then unclaimed and unoccupied, intervening the spring and the vineyard, a portion of which was afterwards, in 1854, taken possession of by one Smith, and subsequently, in 1856, sold by him to Hanson, the plaintiff, constituting the premises or a part of the premises now owned by the latter.  The artificial channel has ever since been maintained, and it brings to the premises of the plaintiff Hanson a stream of living fresh water, which is used by him for culinary and general domestic purposes, and for irrigating the garden, ornamental grounds, fruit trees, flowers, etc. growing thereon; and he has no water on his premises except that found in this channel, or in a well which is fed by the percolations from the channel.  The complaint alleges that the defendant McCue is digging a ditch or tunnel on his premises where the spring is found, in such a way that, if the digging be continued, it will inevitably cut off and intercept "the hidden and subterranean veins, streams, and sources of said spring, and which supply the same with water, and will thereby divert and lead away the waters which would otherwise flow into said spring, and will so lessen, diminish, or entirely cut off and stop the usual and ordinary supply and amount of water in said spring that no water would flow therefrom to or upon said premises of the plaintiff, to his great and irreparable injury," etc.

It is to be observed that the Court below found that, in making the excavation complained of, the defendant, McCue, was actuated not by any malice, but that his purpose was

bona fide the obtaining of water for commercial purposes. Further, it nowhere appears, either in the allegations of the complaint, the findings of the Court, or otherwise by the record, that the spring in question is itself supplied, in whole or in part, by the flow of any defined stream of water, either subterranean or passing along the surface of the earth. Underground currents of water, flowing in defined channels, are known to exist in considerable volume, particularly in limestone regions; and where their existence is shown, there is no doubt, either upon reason or authority, that the rules of law which govern the use of similar streams flowing upon the surface of the earth, are applicable to them. Such a stream, whether emerging or sinking, is in a greater or less degree a fertilizer of the land through which it flows. The right that it should flow *" ubi solebat "* comes *ex jure naturæ,* and no one, merely because he is the proprietor of the soil through which it passes, can claim the corpus of the water of the flowing stream, or intercept its natural descent to the lands of the proprietor below. It not appearing that the spring here is supplied by any defined flowing stream, it must be presumed that it is formed by the ordinary percolations of water in the soil. The Court, it is true, as we have already seen, mentions in its findings "the hidden and subterranean veins, streams, and sources of said spring" as being about to be cut off by the excavation; and the counsel for the plaintiff argues that this amounts to a finding that there is a subterranean stream of a defined character, and flowing in a defined channel, which is about to be diverted. But it is evident that the finding means, in substance, that the spring is supplied in some way by hidden veins or subterranean streams; but the Court does not find that there is any stream known to exist at all, or if there is, whether it flows in a defined channel, which is the important point to be found. It amounts only to a finding that the *" sources "* of the spring—be they what they may—are about to be cut

off. I do not understand the finding as establishing the exceptional fact that the spring here is fed by a known running stream of water flowing in a defined channel. The question, then, comes to this: One who is owner of the freehold—*usque ad infernos*—digging in the soil for the lawful purpose of his own profit, and not actuated by the malicious intent to wantonly deprive the plaintiff of the flow of water, is, at the instance of the latter, enjoined from so digging, because he will thereby divert the waters which percolate the soil from the spring from which the artificial watercourse leads to the lands of the plaintiff. Water filtrating or percolating in the soil belongs to the owner of the freehold—like the rocks and minerals found there. It exists there free from the usufructuary right of others, which is to be respected by the owner of an estate through which a defined stream of water is found to flow. The owner may appropriate the percolations and filtrations as he may choose, and turn them to profit if he can. To hold otherwise would be to hold that the plaintiff here could lawfully claim a right to convert the lot of McCue into a mere filterer for his own convenience. "Such a claim (said the Supreme Court of Pennsylvania, in 2$ Penn. R. 528), if sustained, would amount to a total abrogation of the right of property. No man could dig a cellar or a wall, or build a house on his own land, because these operations necessarily interrupt the filtrations through the earth. Nor could he cut down the forest, or clear his land for the purpose of husbandry, because the evaporation which would be caused by exposing the soil to the sun and air would inevitably diminish, to some extent, the supply of water which would otherwise filter through it. He could not even turn a furrow for agricultural purposes, because this would partially produce the same result."

I am of opinion that the plaintiff has no such interest in

the percolating waters found in the defendant's land as will support this action.

It is next argued, however, that the fact that the plaintiff, and those whose estate he has, have enjoyed the stream flowing from the spring for upwards of fifteen years without interruption, and adversely to the defendant and his grantor, will support a presumption of a grant of an easement by the latter to the former.

The presumption of the grant of an easement, when indulged, is because the conduct of the other party, in submitting to the use for such a length of time without objection, cannot be accounted for on any other hypothesis. The acts done by the party claiming the benefit of the presumption, and his predecessors in estate, must, however, have been in themselves such as the other party having the right to object to, or complain of, did neither, but submitted to them without objection or challenge. Such acts, if continued during a sufficient period of time under such circumstances, would raise the presumption relied upon. But it will be seen at once that McCue, or those from whom he purchased, could, in the nature of things, have no right to complain that the water in the artificial channel, after leaving the spring, was appropriated below by the owners of the Hanson lot. If they had no right to complain in the first instance we are not driven to the presumption of the grant of an easement to account for why they did not complain.

Judgment and order reversed, and cause remanded for a new trial.

CROCKETT, J., specially concurring:

I concur with Mr. Justice WALLACE in the opinion that the defendant, who is the owner of the spring, may lawfully divert the percolations by which it is supplied, provided it

is not done through mere negligence, wantonness, or malice. In *The Trustees of Delhi* v. *Youmans*, 50 Barb. 316, the law on this subject was carefully and elaborately examined, and the authorities industriously collated and reviewed. The propositions established by that decision, and the authorities cited, are: First—That the use of the waters of subterranean streams, flowing in well-defined channels, is governed by the same rules which apply to surface streams, flowing in natural channels; but mere percolations which feed a neighboring spring or well are subject to a different rule, and may be diverted by the owner of the soil, provided it is not done from mere negligence or malice. Second— That the same rule prevails, even though the spring or well supplied by percolation be on the land of an adjoining proprietor, as was the case in *Trustees of Delhi* v. *Youmans*. If these propositions be sound (of which I entertain no doubt) the defendant would have had the right to dig upon his own land, for any purpose not proceeding from mere malice, even though he had thereby diverted the percolations from a spring on the plaintiff's premises. If the plaintiff was the owner of the Dixon Spring, with a consequent right to the use of all its water, the defendant would have the clear right to dig upon his adjoining land, for any useful purpose, notwithstanding he might thereby divert the percolations, and thus destroy the spring. He would not be allowed to do it from mere wantonness and malice; but the owner of the soil is entitled to use the percolations through it, for any purpose which he may deem beneficial, or may divert them in another direction, in the prosecution of any work on his own land which he may consider advantageous to him. I deem it unnecessary to inquire into the reason of the ruling, which, however, is fully stated in the carefully considered case already cited, and the numerous authorities therein referred to. I do not understand the

plaintiff's counsel to deny that the defendant might lawfully divert the percolations from the spring, provided it was only incidentally done in the prosecution of an independent or collateral work on his own premises; but he claims that the sole object of the tunnel is to cut off the supply of the water, and thus destroy the spring, which he insists the defendant has no right to do, by a work expressly prosecuted for that especial purpose. But the findings show that the object of the tunnel is to collect the water for a commercial purpose, to wit: to furnish the neighboring village of San Rafael a supply of fresh water—and this certainly is a proper and useful purpose. If the defendant has the right to divert the percolations by digging a ditch for the mere purpose of drainage, or by sinking a well, essential to the enjoyment of his property, I can perceive no reason why he may not accomplish the same result for any other purpose which he may deem advantageous to him; I think he may do it for any purpose which is not purely malicious. If these views be correct, it is clear that the plaintiff has acquired no rights by prescription which could debar the defendant from exercising his right to divert the percolation from the spring. We have already seen that he could exercise this right, even though the spring was on the plaintiff's premises, and a title founded on prescription, which presumes there was a grant from the true owner, certainly cannot be more available to the plaintiff than a title in fee to the spring itself. But the Court finds that it was the intention of the defendant to tap the spring at the surface, in case he should fail to obtain a sufficient supply of water otherwise. If the plaintiff is entitled to enjoin him from doing this, it will be time enough to restrain him when he is about to put his threat into execution. But if he ought to be enjoined from tapping the spring on the surface, the injunction should, at all events, be limited to that. But I

express no opinion as to the propriety of such an injunction, on the facts presented by the record. For these reasons I concur in reversing the judgment.