[No. 19067.   In Bank. — August 13, 1892.]

## SOUTHERN PACIFIC RAILROAD COMPANY, APPELLANT, *v.* FRANK DUFOUR, RESPONDENT.

WATER RIGHTS — PERCOLATING WATERS — APPROPRIATION OF SPRING — DIVERSION. — Where a spring is fed solely by percolating waters which seep into it from swamp or wet land surrounding the same, and not by any running stream of water, there is no water at such spring to which the right of use can be acquired, either by statutory appropriation or by adverse user, and no action will lie in favor of one who has collected the water at the spring in a reservoir, and transmitted it by a pipe for use, against one who has diverted the water from the reservoir by means of a tunnel and ditch, constructed above the reservoir on his own land, for irrigation and domestic use.

ID. — SUBTERRANEAN WATERS PART OF SOIL. — The law controlling the rights to subterranean waters not running through a channel or defined course is very different from that affecting the rights of surface streams. In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed, and controlled to the same extent by the owner; and no action will lie for injuries caused by cutting it off.

ID. — ACTION FOR DIVERSION — FINDING AS TO PERCOLATION — FAILURE TO FIND AS TO APPROPRIATION. — A finding, in an action for the diversion of water from plaintiff's reservoir, that the reservoir was sustained by percolating waters alone, and that the digging of the ditch by the defendant was for useful purposes upon his own land, and above the reservoir, is sufficient to sustain the judgment in favor of the defendant, and a failure to find upon the issue of appropriation does not constitute a reversible error.

FINDINGS — CONTROL OF JUDGMENT — FAILURE TO FIND. — Where the find-
ing of a certain fact necessarily controls the judgment in an action, the
failure of the court to find upon other issues does not constitute reversi-
ble error.

APPEAL from a judgment of the Superior Court of
Kern County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Joseph D. Redding*, and *J. E. Foulds*, for Appellant.

*Mahon & Laird*, and *J. A. Haralson*, for Respondent.

GAROUTTE, J. — This is an action to restrain respond-
ent from unlawfully diverting certain waters claimed to
have been appropriated by appellant under the provis-
ions of the Civil Code.   Judgment went for defendant,
and this appeal is. prosecuted from the judgment and
order denying the motion for a new trial.   The findings
of the court are not attacked, and the facts of the case
may be briefly stated as follows: In the year 1888, Du-
four acquired title to section 36 of a certain township,
and range situated in Kern County.   Prior to this event
said realty was the property of the state.   Upon this
tract of land was a small tract of marsh or swamp land,
in which the water came to the surface of the ground.
As early as the year 1880 plaintiff made an excavation
or reservoir some five feet in diameter in this marsh, in
which the water collected, and from thence it was trans-
ferred in a small underground pipe a mile or more dis-
tant to the railroad station of Cameron, where it was
applied to the various uses of plaintiff.   In the year 1886,
plaintiff, in pursuance of sections 1410 et seq. of the
Civil Code, posted a notice at the said reservoir, claiming
five inches of said waters measured under a four-inch
pressure; and it is under these acts and the foregoing
provisions of the Code that plaintiff's rights are based.
Prior to the commencement of this action, defendant
made a tunnel into an adjoining hill, and dug a ditch in
connection therewith (said acts being done upon his own

land), for the purpose of procuring water for irrigation and for his sheep. The action of defendant resulted in plaintiff's reservoir becoming dry and the water collecting in defendant's ditch, and this litigation followed.

The court found "that said spring (reservoir) in the complaint described was, on the seventh day of October, 1886, and for a long period of time prior to that date, and ever since such date has been and now is, fed solely by percolating waters which seep into said spring from the swamp or wet land surrounding the same, and such spring is not and never has been fed by any running stream of water." The finding is amply supported by the evidence, which clearly indicates that no stream of water runs into or from the bog or spring other than is conveyed away through plaintiff's pipe line. In the face of these facts, it is entirely immaterial whether the steps taken by plaintiff under the statute law of the state were strictly within the provisions of that law or not. There was no water at the spot to which plaintiff could acquire the right of use, either by statutory appropriation or adverse user, and this principle is supported by unquestioned authority. In *Trustees of Delhi* v. *Youmans*, 50 Barb. 316, the matter is exhaustively discussed, and Justice Boardman there said: " The law controlling the rights to subterranean waters is very different from that affecting the rights of surface streams. In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed, and controlled to the same extent by the owner." After citing many authorities, the opinion continues: " These and other cases establish the principle that no action will lie for injuries caused by cutting off subterranean channels percolating the soil or running through unknown channels and without a distinct or defined course."

The facts of this case place it entirely without any recognized exceptions to the foregoing rule, and bring it directly in line in all essential particulars with *Hanson* v. *McCue*, 42 Cal. 303, 10 Am. Rep. 299, where the principles declared in the case of *Trustees of Delhi* v. *You-*

*mans* are fully adopted; and this court went to the extent of saying, that, in the absence of any proof that the spring was supplied by any well-defined flowing stream, it would be presumed to be formed by the ordinary percolation of water in the soil. In this case, the court having found that the alleged spring or reservoir was fed by percolating waters alone, and the evidence disclosing that no stream of water whatever flowed naturally from the marsh or spring, it is apparent that title to the land carried title to the water, and plaintiff's acts of attempted appropriation created no right or easement, for no water was present which could be the subject of appropriation.

In addition to a specific denial of the allegations of the complaint, by way of a special defense defendant set out that the water flowing from said spring formed a natural watercourse through defendant's land, and that he was entitled to the use of said water as a riparian owner. At the close of defendant's case he withdrew his special defense, and this action of counsel is assigned as error. Upon an examination of the record, we find no objection or exception taken to the withdrawal of this special defense from the answer, and hence do not perceive how it can be a proper subject for review. If plaintiff, relying on the allegations of the defense to cure a defective complaint, was surprised and misled by such action of counsel, upon a proper showing he would have been entitled to a continuance in order that he might amend his complaint or procure additional evidence, but there is nothing to indicate that he applied for such relief.

The complaint states that on the seventh day of October, 1886, the plaintiff appropriated the waters flowing into and from a certain spring (then follows the location of the spring), to the extent of five inches measured under a four-inch pressure. The answer contains a specific denial of this allegation, and the court found as a fact, and in the exact words of the complaint, that plaintiff did not, on the seventh day of October, 1886, appropriate the waters flowing into and from a certain spring (then follows the location of the spring) to the extent of five

inches measured under a four-inch pressure. If the denial in the answer had been couched in the language of the finding, it would have fallen before objection, and the finding must likewise fall. It is evasive, and passes upon no material facts involved in the case. The pleadings presented the issue whether or not there was an appropriation of water. That was the ultimate fact, the heart of the case, and in response to that issue the court found that there was no appropriation of water upon the seventh day of October, 1886, to the extent of five inches measured under a four-inch pressure. The date of the appropriation and the amount of water appropriated were immaterial, and we are thus left without a finding as to the ultimate fact. Can this judgment stand, in the absence of a finding upon the question of appropriation? It was held in *Windhaus* v. *Bootz*, 92 Cal. 623, that where the finding of a certain fact necessarily controlled the judgment, the omission of the court to find upon other issues would not constitute reversible error, for findings upon such issues might be placed to the credit of the appellant and still the judgment stand. Upon this principle of law, respondent contends that the court having found that the spring was sustained by percolating waters only, other findings became unnecessary; for under the authority of *Hanson* v. *McCue*, 42 Cal. 303, 10 Am. Rep. 299, such fact controlled the judgment in favor of respondent. Considered alone, this finding is not sufficient to accomplish such results, for it is not inconsistent with the fact that a natural stream of water flowed from the spring, which might be the subject of appropriation. But the finding that the spring was fed by percolating waters, taken in connection with the additional finding that the digging of the trench or ditch by defendant was for useful purposes, upon his own land and above the spring, inflexibly directs the course of the judgment to the respondent. Conceding that a natural stream of water flowed from the spring, which under *Ely* v. *Ferguson*, 91 Cal. 187, could be the subject of appropriation, still that fact did not create any barrier which would

prevent respondent from digging trenches upon his own land, even though the digging of such trenches resulted in the destruction of the spring as a source of water supply. If respondent's alleged diversion had been located by appellant at a point below the spring and upon a natural stream flowing therefrom, then the principle of law involved would have been entirely different from that now presented. The land where respondent made his excavation was his own land, and the spring was situated thereon, although that fact is immaterial; for, as Justice Crockett said in *Hanson* v. *McCue*, 42 Cal. 305, 10 Am. Rep. 292, "if the plaintiff was the owner of the Dixon spring, with a consequent right to the use of all of its waters, the defendant would have the clear right to dig upon his adjoining land for any useful purpose, notwithstanding he might thereby divert the percolations, and thus destroy the spring." The digging of respondent was upon his own land; he interfered with no natural stream of water, either surface or subterranean; the waters were percolating waters, a part of the soil itself, and of which the owner had the free and absolute use. Under such circumstances, the owner of the land cannot be disturbed. This principle is settled law. (*Hanson* v. *McCue*, 42 Cal. 305; 10 Am. Rep. 292; *Mosier* v. *Caldwell*, 7 Nev. 102; *Delhi* v. *Youmans*, 50 Barb. 316; Angell on Watercourses, sec. 112.) It follows that the findings are sufficient to support the judgment.

Let the judgment and order be affirmed.

HARRISON, J., DE_HAVEN, J., and BEATTY, C. J., concurred.

PATERSON, J., concurring. — I concur. No order was made striking out the cross-complaint; but the court finds it was withdrawn. Assuming, however, that it is still a part of the record, and that the court erred in admitting evidence to contradict the defendant's allegation that the water flowing from the spring formed a natural watercourse, there are no specifications of error.

The appellant's contention, therefore, cannot be considered.

The findings support the judgment, and there is no specification as to the insufficiency of the evidence to support any of the findings.   The failure of the court to find on all the issues is not assigned as ground for a new trial, — it is not alleged that the decision is against law. As the facts found support the judgment, the failure of the court to find on any issue not necessary to support the judgment cannot be considered on the appeal from the judgment.   ( *Winslow* v. *Gohrensen*, 88 Cal. 450.)

McFARLAND, J., dissenting. — I am not able to concur in the judgment of affirmance.  It is true that the pleadings, the objections and exceptions (and the want of them), the findings, and certain occurrences at the trial, present such an uncertain, disjointed, and unsatisfactory record, that it was difficult to see what was or was not decided in the court below.   But I think there should be a new trial, so that, under amended pleadings and proper findings, it may be discovered what the real facts of the case are, and what principle of law is applicable to the rights asserted by the parties.   And I think that the deficiencies of the findings are ground for reversal.

In the complaint it is averred, in substance, that "on the seventh day of October, A. D. 1886, the plaintiff appropriated the waters flowing into and from a certain spring [describing its location] to the extent of five (5) inches measured under a four-inch pressure; that it conveyed the said water to Cameron Station on its railroad, and used it for supplying its locomotives and employees with water; and that it continued to so use it until the —— day of February, 1889, when defendant wrongfully diverted it from the pipes and tanks of plaintiff.   The answer denies that plaintiff ever appropriated any of said waters at any time, or that defendant wrongfully diverted the same; and avers that since July 31, 1888, defendant has been the owner in fee of certain described land; that the spring is on said land; that

"the water flowing from said spring forms a natural watercourse flowing through defendant's said land," and that defendant, as a riparian owner, uses, and has the right to use, "said spring and watercourse" for domestic purposes, watering stock, etc., and that plaintiff, since said July 31, 1888, has, by means of a pipe, tapped "said spring, and the waters flowing therefrom," and diverted them away from defendant's land.

It is clear, therefore, from the pleadings, that there is a "watercourse" having its source at the spring. It is said that defendant "withdrew" that part of his answer which admitted and averred this watercourse. In my judgment it certainly was not withdrawn. The part of the answer which contains this averment is called by the parties a cross-complaint. What happened was simply this: After defendant had rested, plaintiff's counsel — for some reason — chose to say that he desired to introduce the so-called cross-complaint in evidence; whereupon defendant's counsel made the remark, "I desire to say we dismiss the cross-complaint." This remark amounted to nothing more than any other expressed desire for something never obtained, — even if any meaning could be attached to the word "dismiss" as therein used. The status of the answer was not changed in the least by the remark; and it would not have been changed if counsel had used the word "withdraw." He could not have withdrawn the answer by taking physical possession of the paper on which it was written and putting it in his pocket, — which would have been a much more palpable thing than the mere expression of a desire to withdraw it. The record could not have been changed to suit counsel's desire without an order of court.

The main issue in the case, therefore, was, whether plaintiff had appropriated any part of this watercourse; and the only findings on this issue were, that "the plaintiff did not, *on the seventh day of October, 1886,* appropriate the waters flowing into and from a certain spring, . . . . *to the extent* of five inches measured under a four-

inch pressure," and "that plaintiff did, from the seventh day of April, 1866, up to the —— day of February, 1889, enjoy the uninterrupted use of some water taken by it from said spring," but that the amount was less than five inches.  Of course these findings are utterly irresponsive to the said issue.  And there were other findings fully as defective as these.

It is said, however, that defective findings on all other issues are immaterial, because the court found (in findings 5 and 7) that the spring was "fed solely by percolating waters," and not by "any running stream of water," and that the water was taken away from the spring and watercourse by a trench which defendant dug on his own land near the spring, "with a view of securing water for his sheep and stock."  I think that finding 7 is entirely too vague and uncertain to form a basis for the application of certain alleged doctrines about precolating waters.  I have not been able to find any case in which it has been held that a spring and watercourse originating in it can be lawfully undermined and destroyed by a trench or tunnel run for that express purpose, to the injury of a vested right in the watercourse.  And the evidence in the case at bar tends strongly to show that defendant's tunnel and trench were run for the express purpose of destroying the spring and watercourse; and that the main effect was, not to prevent percolating waters from flowing *into* the spring, but to compel the waters of the spring and watercourse to flow *out*, and down into the trench.  I think, therefore, that the findings should have been more specific on this point, and should have stated the facts clearly and fully.  It may be remarked that a watercourse is none the less a watercourse because it has its source in a spring fed by "percolating" waters.

The case relied on by respondent is *Hanson* v. *McCue*, 42 Cal. 303; 10 Am. Rep. 292.  There were two opinions delivered in that case, one of which was based mainly on *Wheatley* v. *Baugh*, 25 Pa. St. 528, 64 Am. Dec. 721 (the citation in the opinion being incorrectly given as

23 Pa. St.), and the other upon the trustees of *Delhi* v.
*Youmans*, 50 Barb. 316. In the Pennsylvania case the
facts were that " a mining corporation, in the course of
necessary operations in mining minerals from their own
land, interrupted the percolations which supplied a
spring on an adjoining tract "; and of course the court
held that where a miner, working his mine in the usual
way, interrupts percolating underground water, the result
is incidental to the lawful use of his land, and if it causes
loss to an adjoining proprietor, such loss is *damnum
absque injuria*. In the case from 50 Barbour, the facts
do not so clearly appear; but the court say that " if the
defendant's excavation or ditch drew the water *from* the
plaintiff's spring instead of stopping the flow of water
from defendant's land *to* such spring, then the defend-
ant would be liable in this action." In *Hanson* v. *McCue*,
42 Cal. 303, 10 Am. Rep. 292, itself, the facts were materi-
ally different from those in the case at bar. In that case,
if there had been a natural watercourse running from
the spring, which Hanson had appropriated years be-
fore McCue or his grantors had acquired any estate in
the land, and McCue had afterwards diverted any of the
water to the injury of Hanson's prior right, then the
facts would have been similar to those claimed by plain-
tiff in the present case. But the facts in that case were,
that McCue's grantor owned the land on which the
spring was as early as 1844, in which year he con-
structed an artificial ditch, by which he carried the water
several hundred yards to a vineyard. This ditch crossed
a piece of " unoccupied and unclaimed " land, which
Hanson did not acquire until a dozen years afterwards.
When McCue undertook to change the course of the
water, thus leaving the old ditch dry, Hanson claimed
that he had acquired a right by prescription to have the
water continue to flow in the old ditch; but the court
held that there was no such prescriptive right, because
McCue would have no right to complain that the water
in the artificial channel, after leaving the spring, was
used below by Hanson, and therefore there was no " pre-

sumption of the grant of an easement." Therefore, as Hanson had no right to the flow of the water through the artificial ditch, it made no difference what McCue did with it, — and that consideration was determinative of the case. But in the case at bar plaintiff claims that it appropriated the waters of the spring and watercourse to a useful and most necessary purpose, while the land on which they were situated was public land, and years before the defendant had any interest therein.

Nearly all the cases in which the disturbance of percolating water has been held harmless have been cases where the party charged has dug a well, or worked a mine, or made some other excavation in the lawful enjoyment of the ordinary use of his land, and where the loss to the complaining party was merely incidental to such use, and not the result of a direct intent to cause such loss. (Two very instructive and exhaustive opinions upon the subject are to be found in *Pixley* v. *Clark*, 35 N. Y. 520, 91 Am. Dec. 72, and *Dickinson* v. *Canal Co.*, 7 Exch. 282.) I fear that the affirmance of the judgment of the case at bar, as it now stands, will make a precedent that will be misleading as to some interesting and important phases of the law of water rights. I think that the case should be retried under proper pleadings; and that there should be findings upon all the material issues, setting forth clearly and fully the pivotal facts of the case.

Rehearing denied.