RAY F. BOWER

*Plaintiff and Respondent*

vs.

BIG HORN CANAL ASSOCIATION, a Wyoming Corporation,

*Defendant and Appellant.*

(No. 2747; February 26th, 1957; 307 Pac. (2d) 593)

For the defendant and appellant, the cause was submitted upon the brief of Goppert and Fitzstephens of Cody, Wyoming, and oral argument by Mr. Ernest Goppert.

For the plaintiff and respondent, the cause was submitted upon the brief and also oral argument of Elmer J. Scott of Worland, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, J. J.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Plaintiff, Ray F. Bower, is the owner of some 569 acres of land sloping downward from the Big Horn Canal to the Big Horn River, all irrigable and part of it so seepy as to interfere with farming operations. The seepage water, all originating from the defendant's canal, is in part a normal residual from the irrigation process and in part a seepage directly from the canal. This latter has materially increased in the past three years, since the construction of the Boysen Dam lessened the silt in the canal water. Plaintiff sought to improve the boggy condition by constructing on his farm land drains which emptied water into a Joint Ditch situate between his property and that of a neighbor and leading to the Big Horn River.

He conceived the idea of utilizing this drainage wa-

ter by reversing its flow, backing it up to a sump, pump it into a ditch (designated as "Bower Ditch" in Plaintiff's Exhibit No. 1), which ran in a northerly direction below and parallel to the canal, to a second sump, and from there pumping it through a steel pipe flume up across the canal to certain arid lands, in part owned by him in fee and in part acquired by desert entry.

On October 6, 1952, he filed with the State Engineer an application to appropriate this water for the land on which he planned to use it. On October 18, 1952, the State Engineer granted the permit subject to the following limitations and conditions.

"This permit grants only the right to use the surplus water of the stream when all prior rights are satisfied.

"This permit is granted insofar as the State Engineer has authority to grant a permit for appropriation of water from this source."

Later, plaintiff dug a ditch (designated as "Bower Drain" in Plaintiff's Exhibit No. 1) below and parallel to the canal, running in a southerly direction and emptying into the second sump above mentioned.

On July 27, 1954, after this ditch had been construed, he filed an application for permit covering an unnamed ditch (identified in the testimony as the "Bower Drain" and hereinafter so designated), stating the use as "supplemental irrigation supply for lands irrigable under the Bower Ditch," and listing the source of the proposed appropriation as the "Bower Drain." Simultaneously, he filed an application for "[No. 1] Enlargement of the Bower Ditch," listing the source of the proposed appropriation as the "Bower

Drain" (the same as in the unnamed ditch).[1] Both of these later applications showed the same source, the same point of diversion, and identical irrigable acreage. Moreover, such acreage was exactly the same as that covered by the application of October 6, 1952, except that 2.1 acres had been added to each of the last two applications. Plaintiff's purpose in the multiple applications is unclear to us despite some explanation given by him at the trial, but we are not able to agree with defendant's unsupported claim that rejection of the latter applications rendered the first permit invalid. It is, however, evident that, confused and overlapping as his applications were, Bower intended to secure water from two different sources, (a) that which seeped into ditches paralleling the canal, and (b) that drained from his farm land. In any event, the stipulated evidence received on the motion for new trial shows that both of the later applications were pending at the time of the judgment in this case in the trial court and were rejected by the State Engineer on May 5, 1955, each carrying the identical notation (except for the word "not," herein italicized, which is omitted in the "Bower Drain" rejection):

"Application proposes to appropriate water that has not left the boundaries of an irrigation project for which an appropriation has *not* been granted in which instance same is not subject to appropriation under Wyoming laws."

Defendant was willing that plaintiff use the water he drained from his irrigated premises on other lands for which he had an appropriation but was unwilling either that he be granted rights to water derived from the ditches which paralleled the canal or that he have

[1]Plaintiff's Exhibit No. 1, a map of the area, is reproduced immediately following this opinion.

any rights to water drained from his irrigated lands if it be taken to arid land for which there was no appropriation. Accordingly, defendant by its superintendent "took out" the steel pipe flume which plaintiff had placed over defendant's canal—whereupon plaintiff brought the present action to condemn a right of way for the flume.

Defendant resisted the action, its philosophy, as expressed in its answers and testimony, being substantially as now urged in this court:

(1) Plaintiff had no valid water right under Wyoming law.

(2) Without a valid water right no eminent domain or condemnation for irrigation purposes was legal or proper.

(3) The taking of waste, seep, or percolated waters from drain ditches which gather the same from lands served by an irrigation canal and system and pumping the same to lands outside of the irrigated area diminishes the quantity of water available for the lands to which it was adjudicated and is detrimental thereto and against the public good.

Defendant also filed a cross petition claiming actual damages because of the trespass on its land. Such damages to defendant's property were stipulated by the parties to be $100.

The court, after hearing the evidence, found that plaintiff was entitled to a right of way (which would not interfere with defendant's construction or operation of the canal) across defendant's canal right of way for the purpose of constructing and maintaining

a pipeline to transport water for irrigation purposes to be used in reclaiming lands lying above defendant's canal; that defendant was entitled to damages in the amount; of $100, as stipulated; that the proceedings for condemnation were regular; that there existed an immediate necessity for said right of way, that defendant's canal right of way extended seventy-five feet on each side of the center line of the canal and that plaintiff's construction thereon of his ditch was improper and should be restrained; that the damages accruing from the construction of the ditch and drain were speculative and no damage by reason thereof had occurred to the date of the judgment.

The court by its judgment accordingly awarded plaintiff the right of way across defendant's canal, decreed $100 costs to the defendant for actual damages, and enjoined plaintiff from maintaining any part of his "supply ditch" on defendant's right of way. Although the question of plaintiff's depletion of the canal water and his interference with its transportation was not directly passed upon by the court, it was indirectly determined by the judgment disposing of defendant's cross petition, wherein defendant had claimed that plaintiff by his drain and gathering system increased the percolation and seep from defendant's canal, imperiling the canal, and causing a shortage of defendant's water. The trial court's general finding for plaintiff and against defendant allowed plaintiff the right of way and, if unreversed, holds the October 6, 1952, application to be valid.

The evidence adduced at the trial is not in substantial conflict. The water which formerly drained from plaintiff's land to the Big Horn River through the Joint Ditch was variously stated to be ½ to 1½ c. f. s., but all witnesses agreed that it was seepage from

lands irrigated from the canal; and there was no evidence to substantiate the implication that the using of this seepage would have any effect upon the water in the canal. The amount of water which plaintiff proposed to take across defendant's canal in the pipe was substantially more than the amount formerly carried to the river in the Joint Ditch, which fact points up the *possibility* of defendant's water being diminished but leaves much to be desired as far as proof is concerned.

It is unclear whether or not the water seeping into the "Bower Ditch," "[No. 1] Enlargement of the Bower Ditch," and the "Bower Drain" will actually take water from defendant's canal. The parties seem to be in disagreement on this subject, and no indisputable evidence was presented by either party to show the true situation. Nevertheless, this lack of evidence is unimportant in the determination of this cause since:

(1) Plaintiff's application of October 6, 1952, was, on its face, limited in source to the drainage ditch; and the permit could have carried no rights to water which seeped into the "Bower Ditch"; and

(2) Plaintiff's permit applications for the "[No 1] Enlargement of the Bower Ditch" and for "Bower Drain" were both rejected by the State Engineer. The record, by stipulation, contains a copy of an appeal from the rejection of enlargement but shows no perfection of such appeal and contains no action following the rejection of the drain. Thus, as far as this court is concerned, both of these applications stand *rejected*.

Defendant in its brief and in the argument on the appeal from the judgment has refrained from contesting the $100 allowance for actual damages by rea-

son of the construction of the pipe and has freely admitted that the true reason for its resistance to plaintiff's demand is the alleged depletion of the water supply in the canal by plaintiff's action and the detrimental precedent which would be set by permitting the use on lands outside the irrigation district of water which seeps from defendant's canal.

Although some six errors are charged to the trial court, defendant in his brief states that "these formal exceptions can be consolidated for presentation to the court under three points." Accordingly, we shall discuss only those three points on which defendant presented argument.

Defendant's first contention was: *"That a water right or permit having a drain ditch as its source of supply is not a valid water right under Wyoming law."*

To support this view, defendant first cites 93 C.J.S., Waters § 170:

"There can be no valid appropriation unless there is water to appropriate which is subject thereto; the right depends on whether or not the water claimed is such as is subject to appropriation at the place and in the maner in which the appropriator attempted to acquire it. * * *"

This statement is axiomatic, but is helpful only after we determine whether seepage water developed and caught by drain ditches is subject to appropriation under the Wyoming constitution and statutes.

Similarly, because of its general nature, we gain little benefit from the portion of Long on Irrigation (2d ed.), p. 167, next quoted by defendant:

"It seems that one who develops and applies to beneficial use percolating waters on public land may thereby acquire an exclusive right to the water so developed,

but, in general, percolating waters are held to have no legal existence apart from the soil in which they occur, and, therefore, are not subject to appropriation for irrigation or other purposes. Such waters do not come within the provisions of the statutes relating to appropriation. * * *"

As this author indicates, the paramount question is whether or not the water came "within the provisions of the statutes relating to appropriation." According to the everyday use of the word "statutes," Wyoming has none on this subject. The parties have not contended that our underground water law, §§ 71-268—71-275, W.C.S.1945 [1955 Cum. Pocket Supp.] applies.) However, it has often been said that "A constitution is but a higher form of statutory law." Willis v. St. Paul Sanitation Co., 48 Minn. 140, 50 N.W. 1110, 1111, 16 L.R.A. 281, 31 Am.St.Rep. 626. See also Rasmussen v. Baker, 7 Wyo. 117, 50 P. 819, 38 L.R.A. 773; 16 C.J.S., Constitutional Law § 1, n. 6; 11 Am.Jur., Constitutional Law § 3; 1 Cooley, Constitutional Limitations (8th ed.), p. 4.

We, therefore, look to the Constitution of Wyoming and find of particular interest three sections which relate to water:

"Water being essential to industrial prosperity, of limited amount, and easy of diversion from its natural channels, its control must be in the state, which, in providing for its use, shall equally guard all the various interests involved." Art. 1, § 31.

"The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state." Art. 8, § 1.

"Priority of appropriation for beneficial uses shall give the better right. *No appropriation shall be de-*

*nied except when such denial is demanded by the public interests."* Art. 8, § 3. (Emphasis supplied.)

These provisions are unique. Not only do they differ from those of states embracing the riparian rights doctrine, but they are even unlike those of other arid and semi-arid states which adhere in a greater or lesser degree to the doctrine of beneficial use.[2] Each provision is meaningful and significant but, like every other statement in our *supreme law,* must be interpreted in the light of the entire document rather than as sequestered pronouncement.

As we turn to the cases which have been cited for our attention, it may be well at the inception of our analysis to allocate to their proper perspective three of them from the respective sister jurisdictions of California, Arizona, and New Mexico—all relied upon by defendant as authority for the proposition that seepage water is not subject to appropriation under the laws of the *state of decision.*

First: Southern Pac. R. Co. v. Dufour, 95 Cal. 615, 30 P. 783, 19 L.R.A. 92 (1892), was a case in which the plaintiff railroad company sought, on the ground of prior appropriation, to restrain defendant from diverting certain waters which came to the surface on defendant's marshy ground. The lower court held for the land owner; and on appeal this was affirmed, the court relying on Hanson v. McCue, 42 Cal, 303, 305, 10 Am.Rep. 299, and Trustees, etc., the Village of Delhi v. Youmans, 50 Barb. N.Y., 316 (affirmed 45 N.Y. 362,

---

[2]For an interesting comparison of these sections of the Wyoming constitution with constitutional provisions of other western states, see "The Background of the Wyoming Constitution," a thesis by Richard Kenneth Prien (1956), pp. 54 and 85, available at the University of Wyoming library.

6 Am.Rep. 100). It is interesting to note that in neither the basic case nor the two authorities relied upon was reference made to a constitutional provision. Instead, the basis for the holding was common law. The California constitution, prior to the 1928 adoption of Art. 14, § 3, specifically provided that common law (embracing riparian rights) was the rule of decision in that jurisdiction. See Gin S. Chow v. City of Santa Barbara, 217 Cal. 673, 22 P.2d 5.

Second: Howard v. Perrin, 8 Ariz. 347, 76 P. 460, 462 (1904), affirmed 200 U.S. 71, 26 S.Ct. 195, 50 L.Ed. 374, was an action in ejectment in which the defendant as a cross-complainant claimed to hold by mesne conveyance a right (accruing by virtue of appropriation) to a subterranean stream. The court held against defendant on this point, calling attention to the Arizona statute (R.S. 1887, par. 3199, § 1), " 'All rivers, creeks and streams of running water * * * are hereby declared public, and applicable to the purposes of irrigation,' " and indicating that defendant had failed to meet his burden of showing that there was " 'a subterranean stream with well-defined channel or banks.' " It may be noted that the constitutional and statutory provisions of Arizona on this subject were entirely dissimilar to our own.

· Third: Vanderwork v. Hewes, 15 N.M. 439, 110 P. 567, 568 (1910), related to an application for appropriation of seepage water. A protest against the appropriation was sustained, the court holding that the seepage water said to be appropriated did not fall within the statutory definition (c. 49, Laws 1907, § 1) that " 'all natural waters flowing in streams and water courses, whether such be perennial or torrential, within the limits of the Territory of New Mexico, belongs to the public and are subject to appropriation for beneficial use.' "

From this brief analysis of the three cases, it is evident that none of the opinions dealt with specific provisions such as the sections of the Wyoming constitution above quoted but, on the contrary, related respectively to (a) the doctrine of riparian rights in California, (b) a statute in Arizona permitting appropriation from " 'rivers, creeks and streams of running water,' " and (c) a statute in New Mexico discussing " 'natural waters flowing in streams and water courses, whether such be perennial or torrential.' " It would seem that these three cases are, therefore, of slight value in the solution of our present problem.

We turn then to the Wyoming cases mentioned in the briefs, preferring to consider them in the chronological order in which they have come to the courts.

Willey v. Decker, 11 Wyo. 496, 73 P. 210, 100 Am. St.Rep. 939 (1903), is mentioned peripherally by defendant as one wherein the court considered points of interest in the present situation. Since it was relied upon for no special point of law and does not seem to bear directly upon the matter at hand, we need not discuss it.

In Hunt v. City of Laramie, 26 Wyo. 160, 181 P. 137, 139, 140 (1919), the Plaintiff on a rehearing before the board of control was granted a permit to appropriate the water from a "springs" located on Pope's ground, which water Pope had artificially developed by excavation and later transferred to the city of Laramie. On appeal, the district court reversed the board's decision and disallowed the appropriation, which view was sustained by the supreme court with the statement that "percolating waters developed artificially by excavation and other artificial means as was done in this case belong to the owner of the land on which they

are developed." Such statement, isolated from the facts in the case and from the background of the cases therein cited, might, as here contended, be taken to authorize a view far broader than that intended by the court. Without research of the record to determine what was there meant by "percolating water," the decision, as we analyze it, basically stands for a single principle, i.e., that one who by excavation and effort brings to the surface waters which would not otherwise be available will not be deprived of them by one who has contributed nothing to their production.

United States v. Ide, 10 Cir. 1921, 277 F. 373, affirmed Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407, was cited by defendant as a case similar to the one at bar and as authority for the view (a) that the plaintiff in the case at bar cannot appropriate "percolation directly from the appellant's [defendant's] canal through the pervious gravelly strata underlying the area and from waste waters allowed to run therein by irrigator members of appellant's [defendant's] company," and (b) that "waters which have been temporarily permitted to escape from appellant's canal are subject to recapture and not subject to appropriation for use outside of the area included in the project." We shall, therefore, analyze those opinions to determine whether or not they constitute valid support for defendant's views.

The Ide case was a suit by the United States to enjoin defendants, owners of tracts within a Government irrigation project who claimed to have appropriated water from Bitter Creek, a ravine on or near their lands, from threatened interference with changes which the Government sought to make in the ravine. The defenses raised were two, an improper trespass on

defendants' tracts and destruction of asserted appropriations.

As defendant here indicates, Judge Carland in the Circuit Court held that Bitter Creek was not a natural stream and that the State of Wyoming could not make it so by issuing a permit. But the court made a further statement at 277 F. 382 which defendant fails to quote:

"The right of the plaintiff to save and continue to use the drainage, seepage, and waste waters of its project is established by the following cases: [citing many cases].

"The permits granted by the state of Wyoming to the defendants could not authorize the defendants to take the waters of the plaintiff, and, as Bitter creek was not a natural stream, said permits gave no authority to take water from Bitter creek. * * *"

Thus, the court in specific terms excluded from its opinion a ruling on the appropriability of seepage water unclaimed by the project.

That this view was approved by Mr. Justice Van-Devanter is indicated by his enumeration at 263 U.S. 501 of the questions considered by the Court:

"* * * (1) whether the plaintiff has a reserved right of way over the small tracts, under which it may convert the ravine into a ditch to be used for the purpose already indicated; (2) *whether, apart from seepage from project irrigation,* the ravine carries a natural stream or flow of water susceptible of effective appropriation; (3) whether the plaintiff had a right to recapture and utilize seepage from project irrigation finding its way into the ravine, and (4), if it had, whether that right has been abandoned." (Emphasis supplied.)

From this statement, it will be observed that there

is not one question in the Ide case which is germane to the present situation. Applying each of them, in the order named, to the case at bar, we find that (a) defendant herein does not claim to have reserved a right of way on plaintiff's land; (b) the present case does not deal with a natural stream "apart from seepage from project irrigation"; (c) defendant has not attempted to and does not claim a right to recapture and utilize the seepage; and (d) plaintiff has not urged defendant's abandonment even though defendant has failed to make any effort to use the water.

It follows, therefore, that defendant has read into the Ide case more than is warranted. In passing, we may also note our disagreement with the summary interpretation of this case by plaintiff in which he restricts its holding to "authority for the proposition that the appellant [defendant] may recapture the seepage water from its canal while such water is still within its right of way."

The controlling facts in the present situation are not identical to those in United States v. Ide, supra, and the questions answered by the Court in that case do not provide a solution for the problems before us. Therefore, no purpose would be served by our considering isolated quotations from the opinions. We are impressed, however, with Mr. Justice VanDevanter's statement at 263 U.S. 505:

"* * * The state law and the National Reclamation Act both contemplate that the water shall be so conserved that it may be subjected to the largest practicable use. * * *"

and his quotation from United States v. Haga, D.C. Ida., 276 F. 41, 43, indicating that beneficial uses and

the prevention of wastage are the major factors in determining who shall have the right to utilize water.

Defendant cites Wyoming Hereford Ranch v. Hammand Packing Co., 33 Wyo. 14, 236 P. 764 (1925), without delineating its holding; and it is probably unnecessary for us to analyze it further than to note two points for which the case has often been mentioned:

(1) No lawful diversion of water can constitute an appropriation unless based on a permit.

(2) When appropriated waters have been used to the full extent intended by the appropriation, the quantities unconsumed and returned to the stream are then a part of the waters of the State.

Plaintiff cites Riggs Oil Co. v. Gray, 46 Wyo. 504, 30 P.2d 145 (1934), to support his view that surface water impounded by a land owner becomes his absolute property. In that case the defendant, an oil driller on a State lease, constructed a dam to impound diffused surface water. Later, when a subsequent driller on the land made use of the water impounded by the dam, defendant demanded payment for the water and upon refusal interfered with plaintiff's use of it. The court held that plaintiff was entitled to a permanent injunction against defendant. This holding is of little benefit to us unless we say that (a) water is divided into classes according to its location, the right to ownership being determined by its classification; and (b) the principle relating to diffused surface water is applicable and determinative of the question relating to seepage water. This concept we are unprepared to approve, especially when the parties have presented no precedent upon the point.

State v. Hiber, 48 Wyo. 172, 44 P.2d 1005 (1935),

also deals with diffused surface waters, which the court takes occasion to define. Therein, one Adamson sought to prevent the defendant, Hiber, from impounding waters by a dam on his land. The court denied the requested relief, holding that in the absence of a statute surface water is not a natural stream and is not subject to appropriation. This case, cited by both plaintiff and defendant, discusses only surface water; and it, too, can be persuasive in the present situation only insofar as analogy is applicable—of which we are unconvinced.

In Binning v. Miller, 55 Wyo. 451, 102 P.2d 54 (1940), relied upon by both plaintiff and defendant, the plaintiff built a dam on his land, thereby impounding water for use upon certain of his lands otherwise arid. By his court action, plaintiff sought to prevent the intervention of the water superintendent acting upon the request of a prior appropriator of the water (which water appropriator, Bayer, became the actual defendant by intervention). The real question in the case was whether the prior appropriation of what was termed in the original application as "waste and seepage water" was good as against the owner of the land from which said water came. The court held that the seepage water which formed a natural stream might be appropriated, subject to the right of the land owner to use the water for beneficial purposes upon the land for which the water forming the seepage was originally appropriated.

Defendant, by underlining, emphasis in his quotation of Binning v. Miller at 102 P.2d 62 the following statement:

"* * * It is probably safer, for the benefit of all, and for the sake of stability of water rights, to declare

definitely that an appropriation of seepage water is void. * * *"

It must be remembered that the court in the discussion preceding this statement had been considering the possible rights of downstream water users who depended upon return flow, and the statement related primarily to the reluctance of the court to take any step which would tend to deprive such persons of their day in court. Moreover, the now-emphasized words must not be taken out of their context, as they were used in discussing a legal struggle between one who first appropriated the water and the owner of the land upon which the seepage occurred. In reaching its conclusion, the court cited many cases and said of them at 102 P.2d 60, 61:

"* * * Each of these cases, it is true, involved a contest in which the owner of the land from which the percolating water was sought to be taken objected because of the use which he intended to make of it, and we have looked for cases in which such use was not possible or was limited, but we have found none. But the authorities seem to agree that the lower owner using such water merely takes his chances that the supply will be kept up; that he has no right thereto, no matter how long he may have used it. Kinney, Irrigation, 3rd Ed., Sections 661, 1208; Wiel, supra [Water Rights, 3rd ed.], Sections 55-59. In Garns v. Rollins, 41 Utah 260, 125 P. 867, 872, Ann. Cas. 1915C, 1159, the court stated that: 'The Law is well settled, in fact the authorities all agree, that one landowner receiving waste water which flows, seeps, or percolates from the land of another cannot acquire a prescriptive right to such water, nor any right (except by grant) to have the owner of the land from which he obtains the water continue the flow.' These cases consider seepage and waste water as private water so long as it is on the lands from which it originates, and that seems to be correct. * * *"

Thus, all that was really decided in the Binning case

was that a person seeking to appropriate seepage water could not do so and thereby secure a permanent right to continue to receive the water. As the court said, Binning might be able to use more of the water on the land for which it was originally appropriated; he might find better ways of utilizing the water on the same land so that less waste and seepage would occur.

No appropriator can compel any other appropriator to continue the waste of water which benefits the former. If the senior appropriator by a different method of irrigation can so utilize his water that it is all consumed in transpiration and consumptive use and no waste water returns by seepage or percolaton to the river, no other appropriator can complain. Application of Boyer, 73 Idaho 152, 248 P.2d 540. Presumably a person using water on his land may abandon his irrigation altogether and return his lands to a non-irrigated use if he desires to do so. As was said in the Binning case, there is no rule which will require a man to continue irrigating when he does not so choose. If Binning were to do any of these things, he would reduce the flow to Bayer; but Bayer could not complain.

Thus, the Big Horn Canal Association's contention that Binning v. Miller, supra, holds an appropriation of seepage water to be void is, upon a full consideration of the case, without merit. Moreover, the court in that opinion specifically declined to decide the point, stating at 102 P.2d 61:

"* * * Binning does not claim that he can use the waste and seepage water in question upon the land for which the water was appropriated, but wants to use it on land, about 100 acres in extent, which is adjoining. But whether or not under our system of appropriation he should be permitted to do that, without an application for a permit therefor, is a doubtful question.

The point has not been well presented, and we do not want to decide it until it is necessary. We do not think it is. * * * "

Applying the enunciated rules of this court to the instant case, we find that plaintiff cannot insist upon defendant's continuing to make the seepage available to him. On the contrary, defendant company may abandon its canal, relocate it, or line it with an impervious substance so that seepage ceases. But this does not mean that plaintiff is without right upon which to predicate his claim for condemnation of the right of way to take water in a pipe across defendant's canal. Nor does it mean that because water may not be available to him at all times that he may not be allowed to appropriate it for such times as it may be available. In the Binning case, we said that seepage water which, if not intercepted, would naturally reach a stream is just as much a part of the stream as the water of any tributary. Were we now to hold that plaintiff is without right to such seepage water, which is a part of the stream, we would thereby allow later appropriators from the stream-proper to by-pass earlier beneficial users, who have made substantial investments in ditches, improvements, and equipment. Such is not and should not be the law where prior appropriation is the rule of water use. Not only would it be contrary to the expressed views of the framers of our constitution, but it would be in conflict with the greatest opportunity for full utilization.

In the Binning opinion, the importance of protecting water rights based upon return flows was repeatedly stressed. We would certainly discourage development and retard the full and efficient use of our precious water supply were we now to say that persons who save return flows and seepage before they reach a stream and put the water to beneficial use have no pro-

tection in law, that latecomers who subsequently seek rights from the stream itself can take the water as against the persons who have put it to beneficial use for years. Instead, we should here reiterate a principle announced in the Binning case, that water such as that in the Joint Ditch, which if not intercepted would naturally reach a stream, is appropriable. Additionally, it is equitable, in accordance with the constitutional provisions of this State, and in line with our previous holdings, that we here decree seepage water arising on Bower's land to be subject to appropriation by him (subject to prescribed procedures) for lands other than those upon which the seepage arises. Plaintiff's permit based on his October 6, 1952, application was properly granted; but any rights plaintiff secured thereby are subject, of course, to the right of defendant to terminate that source of the supply which seeps directly from defendant's canal and subject also to the rights of prior appropriators further down the stream, if they can prove that his interception of the water materially damages their prior rights. Plaintiff's right is, however, superior to any claims of subsequent appropriators; and it is a valid right upon which to base his claim for a right of way by eminent domain under Art. 1, § 32, of the constitution. Such a right is not affected by the fact that there exists no method of compelling the continuance of the source of the water. See Crane v. Stevinson, 5 Cal.2d 387, 54 P.2d 1100; Vaughan v. Kolb, 130 Or. 506, 280 P. 518.

Whether or not defendant in its answer and cross petition sufficiently alleged that the water drained from plaintiff's farm land depleted the water in the canal cannot be said with certainty. In any event, there was insufficent proof in this regard.

We return then to defendant's contention "That a

water right or permit having a drain ditch as its source of supply is not a valid water right under Wyoming law." From our discussions and analyses of the law applicable to the point, we find that if the drain ditch tends to deplete water being transported in a canal an application for appropriation may be denied upon a showing that the water is improperly taken from the canal. On the other hand if the drain ditch gathers seepage which is uncaptured by the canal owner and which would naturally reach a stream, the water is appropriable as being a part of the stream to which it would flow.

The second point urged by defendant was *"That the right of eminent domain, or of condemnation, cannot be used by a person without a valid water right to take the property of another to use as an irrigation ditch right-of-way for his own private use and benefit."*
Since we hold that the water covered by plaintiff's application of October 6, 1952, related to appropriable water, it becomes unnecessary for us to discuss defendant's second contention.

We turn then to defendant's third point: *"That the taking of waste, seep or percolated waters from drain ditches which gather the same from lands served by an irrigation canal and system constructed and used to water 24,000 acres of land and pumping the same to lands outside of the irrigated area diminishes the quantity of water available for the lands to which it was adjudicated and is detrimental thereto and against the public good."*

To us, this statement is not free from ambiguity, especially in the light of the argument presented thereunder. If defendant thus contends that plaintiff's taking to lands outside the irrigated area of seepage

arising on his irrigated lands would diminish the flow of water in defendant's canal, his contention is, as previously pointed out, untenable because there is no proof in that regard. If, on the other hand, defendant contends that the taking of seepage water from the area immediately adjacent to the canal will diminish the quantity of transported water, the view might have had merit, for we can agree that any rights to which plaintiff may be entitled under an application filed by him cannot legally under § 71-240, W.C.S.1945, or for that matter under any principle of law, "impair the value of existing rights" of the defendant. However, we are doubtful that this point was fully litigated below and certainly there was no sufficient pleading and proof to warrant a judgment in defendant's favor in this regard. We find defendant's third contention to be without merit.

Since we have been unable to accept defendant's views of the law as applied to the facts in this case and since we have specifically limited the water which we find to be subject to plaintiff's appropriation, it may be well to now recapitulate.

Plaintiff's original application granted him no water which may seep into the "Bower Ditch"; and his applications for permits for "Bower Drain" and "[No 1] Enlargement of the Bower Ditch" were rejected by the State Engineer. He is, therefore, without basis for claim to any waters except those draining from his lands. He may not use either the "Bower Drain" or the "[No. 1] Enlargement of the Bower Ditch" unless permitted by proper authorities so to do.[3] He is entitled to use the "Bower Ditch" for the transportation of water drained from his lands by way of sump number one through the "Bower Ditch" to sump number two, provided that unless hereafter permitted by

the proper authorities[4] he may not use any water which may seep into the "Bower Ditch" in the area where it passes below the defendant's canal.

This ruling might at first seem to preclude plaintiff's use of his projected system, including the "Bower Ditch" and the pipe across defendant's canal leading to his arid lands; but we do not so intend it. For instance, (a) it might hereafter be agreed between the parties or be found by a competent authority that water collecting in the "Bower Ditch" would not deplete the water in the canal, (b) plaintiff might construct the "Bower Ditch" of impervious material which does not admit of seepage from the canal, or (c) it might be possible that the water coming from the lower sump be measured and that plaintiff be permitted to take no more water through the pipe which crosses defendant's canal than the amount which he takes from sump number one—diverting any excess back into defendant's canal.

Subject to the stated limitations which restrict plaintiff's right to use the water in issue to the amount which may be taken from sump number one, we find no error and accordingly affirm the judgment of the trial court.

Affirmed as modified.

---

[3]We have intentionally left open the questions of future rights to appropriate water in this area and the construction of ditches relating thereto as being within the province of the State Engineer, subject to appeal as provided by law.
[4]*Id.*

LEGEND

Lands Irrigable Under Bower Ditch.

PLAINTIFF'S EXHIBIT NO. 1