[14149. Department One.— May 24, 1893.]

FRANCIS J. SULLIVAN, EXECUTOR, ETC., APPELLANT, WENDELIN ZEINER, RESPONDENT.

COTERMINOUS OWNERSHIP OF LAND—SUPPORT OF BUILDING—PRESCRIPTION.—The owner of a house and the land upon which it is situated cannot acquire a prescriptive right to the support of his building, and thereby cast upon the coterminous owner the duty of protecting it from an excavation upon the land of the latter, when the excavation, in the absence of the building, would not have affected his ground.

ID.—LATERAL SUPPORT OF ADJOINING LAND—COMMON-LAW CONSTRUCTION OF CODE.—The amendment of 1874 to section 832 of the Civil Code, in omitting the words "by nature" from the provision protecting each coterminous owner in the lateral and subjacent support which his land receives from the adjoining land, and in making such right of support subject to the right of the owner of the adjoining land to make proper excavations for building purposes, on using ordinary care and skill and reasonable precautions to sustain the land, and giving reasonable notice of his intention to excavate, does not enlarge the right of lateral support as given by the common law, which only protected the land in a state of nature, and not against loss from the weight of a building thereon.

ID.—CAUSE OF ACTION ESSENTIAL TO PRESCRIPTION.—A title by prescription cannot be acquired unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom the acts are performed.

ID.—NO RIGHT INVADED BY BUILDING.—A building on adjoining land invades no right of the coterminous owner, and inflicts no injury upon which he could base an action, and his failure to sue can create no right against him, or easement in or servitude upon his property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion.

*Frank J. Sullivan*, for Appellant.

*Arthur Rodgers*, and *William L. Rodgers*, for Respondent.

*W. H. Carrows, Amicus Curiæ.*

HAYNES, C.—Defendant demurred to plaintiff's complaint, the demurrer was sustained without leave to amend, judgment was thereupon entered for defendant, and plaintiff appeals therefrom.

The complaint alleges that plaintiff and defendant own adjoining lots in the city of San Francisco; that on plaintiff's lot there is a building, erected twenty years ago, along the line between the two lots; that defendant commenced an excavation on his lot for the purpose of building thereon, and excavated up to the line of and deeper than the foundation of plaintiff's building, whereby it is left without the lateral and subjacent support to which it is entitled, etc., and prays judgment for damages and an injunction. The complaint also alleged that no "written notice" of defendant's intention to excavate was given; but no question is made here as to the sufficiency of the notice.

There is no allegation in the complaint that defendant's excavation was so made that plaintiff's lot was left without sufficient lateral support if there had been no building thereon, but appellant relies solely upon the proposition that he has gained by prescription a right to the support of his building, whereby the duty is cast upon defendant of protecting it, when the excavation in the absence of the building would not have affected his ground.

It is well settled at common law that coterminous owners have a natural right to the lateral support of each others' ground; or, to state it more exactly, that while a coterminous owner has the right to excavate his own ground for any lawful purpose, he must do so in such manner that his neighbor's ground will not by its own weight or through the action of the elements fall into the excavation.

Appellant contends that the amendment of section 832 of the Civil Code, made in 1874, has modified this rule. That section, as originally enacted, was taken from the proposed Civil Code of New York, and read as follows: "Each coterminous owner is entitled to the lateral and subjacent support which his land *by nature received* from the land of the other." This section was probably intended to be a statement of the common law, but it is capable of a widely different construction. If instead of the words "by nature," the words "in a state of nature" had been used, the meaning would have conformed to the common law; whilst the words used, if literally interpreted, would prevent either owner from diminishing the support which his soil in a state of nature gave to the other, and so make all excavations up to the dividing line unlawful.

As amended in 1874, that section now reads:—

"Sec. 832. Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations."

In *Aston* v. *Nolan*, 63 Cal. 269, this section as it now stands was considered, and it was there held that it imposed no new duty upon one intending to excavate, unless it were the duty of giving reasonable notice of his intention; and as to what the law was prior to the enactment of the above section, the court quoting from 2 Washburn on Real Property, 331, said: "Every one has so far a right to have his own soil sustained by that of his neighbor, that the latter may not dig so near to the land of the former as to cause the same to fall into the exca-

vation by its own natural weight. . . . . But this right of a land-owner to support his land against that of the adjacent owner does not, as before stated, extend to the support of any additional weight or structure that he may place thereon. If, therefore, a man erects a house on his own land so near the boundary thereof as to be injured by the adjacent owner excavating his land in a proper manner, and so as not to have caused the soil of the adjacent parcel to fall, if it had not been loaded with an additional weight, it would be *damnum absque injuria;* a loss for which the person so excavating the land would not be responsible in damages." This case was cited and approved in *Conboy* v. *Dickinson,* 92 Cal. 602, where it was stipulated that the slide of plaintiff's land into the excavation was not caused or assisted in any respect by plaintiff's building. The jury were instructed that in case they found for the plaintiff they were only entitled to recover for the damage done to the land, and not for damage to the house; and this instruction was approved.

In neither of these cases was the question presented of an easement by prescription for the support of buildings; but aside from that question they settle the construction of section 832 of the Civil Code, and conclusively show that the omission of the words "by nature" from the original section, did not, as contended by appellant, enlarge the right of lateral support as given by the common law.

In *Aston* v. *Nolan,* 63 Cal. 269, after quoting from Washburn on Real Property as above, the learned justice who wrote the opinion said: "It may be added, if the building has stood for five years (in this state) before the excavation, the person who has erected it has required a species of easement in his neighbor's land — a right to the support of his building as well as soil. No such question as this last is presented in the case now before us." This expression of opinion, though not authority, is entitled to consideration. It was doubtless suggested by some of the many authorities which support that proposition, but without a consideration of analogous cases in this court which conclusively settle the question the other way.

. Section 1007 of the Civil Code is as follows: "Occupancy for the period prescribed by the Code of Civil Procedure, as

sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

In *Woodruff* v. *North Bloomfield G. M. Co.*, 9 Sawy. 513, it was said of this section: "The statute really does nothing but fix the time at which a title by prescription shall vest, which was not very definite under the common law, but leaves the circumstances which shall constitute prescription to be determined by the settled law of the land as it stood before the code." (See also *Thomas* v. *England*, 71 Cal. 456, 458.) The basis of a right or title by prescription was the fiction of presuming a grant from possession or use for a given time, now, for the period required to bar an action for possession; but the possession or use in order to create the presumption of a grant must, under the code as well as at common law, have been made under such circumstances that he whose property or right was affected could have prevented the possession or use, if no grant had in fact been made. This reference in section 1007 of the Civil Code to the statute of limitations is significant, inasmuch as the latter statute is based upon the ability of the party to maintain an action, and excludes the time during which a disability to sue may have existed; but the personal ability to sue can surely not be more important, as an element in title by prescription, than the invasion of a right which gave a cause of action.

The plaintiff, by the erection of his building wholly upon his own lot, invaded no right of defendant. He might place the foundation of his building upon the surface, or sink it any depth he desired, and in neither case could defendant object. No injury was inflicted upon him upon which he could base an action, and if so, his failure to sue could create no right against him, or easement in, or servitude upon, his property.

The case of *Hanson* v. *McCue*, 42 Cal. 303, was upon different facts, but involved this precise question. There the waters from a spring upon defendant's land flowed upon plaintiff's land, and had been used and enjoyed for fifteen years without interruption; and this, it was claimed, presumed the grant of an easement. The court said, page 310: "The presumption of the grant of an easement, when indulged, is because the conduct of

the other party, in submitting to the use for such a length of time without objection, cannot be accounted for on any other hypothesis. The acts done by the party claiming the benefit of the presumption, and his predecessors in estate, must, however, have been in themselves such as the other party having the right to object to, or complain of, did neither, but submitted to them without objection or challenge. . . . . If they had no right to complain in the first instance we are not driven to the presumption of the grant of an easement to account for why they did not complain."

In *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 183, it was said: "The latter could not complain, and title by prescription cannot be acquired unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom the acts are performed." (Citing *Hanson* v. *McCue,* 42 Cal. 303. See also *Unger* v. *Mooney,* 63 Cal. 595; *Thomas* v. *England,* 71 Cal. 457–460.)

In *Gilmore* v. *Driscoll,* 122 Mass. 207, Gray, C. J., said: "It is difficult to see how the owner of a house can acquire by prescription a right to have it supported by the adjoining land, inasmuch as he does nothing upon and has no use of that land, which can be seen, or known, or interrupted, or sued for by the owner thereof, and therefore no assent of the latter can be presumed to the acquirement of any right in his land by the former." It is true that case did not require the decision of that question, but the statement commends itself as based upon sound reason.

The case of *Mitchell* v. *The Mayor of Rome,* 49 Ga. 25, involved similar facts, and is directly in point. It is there said: "The fact that the *user* must be adverse must exist in every such case to authorize the necessary presumption. If the use of the easement be *ab initio* legal or rightful, the title of the occupant is as good at the outset as it could be by the lapse of any length of time, and there is no necessity of any presumption. But if it be the usurpation of the property of another under a claim of right, it then becomes adverse, for it is in hostility to the title and in derogation of the rights of the original owner —an actual ouster of him. In such cases a grant, or license, or covenant is presumed for the purpose of quieting the enjoy-

ment or possession thus adversely held or used. The injured party, who may for such a long time sleep over his rights, cannot complain of this rule. He could have had redress any day during the twenty years. . . . . His remedy was in his own hands. This right of the injured party is a cardinal fact that must exist, else all statutes of limitation and all rules of prescription or of presumption, of license or grant, would be but rules of spoliation or robbery." (See also *Napier* v. *Bulwinkle*, 5 Rich. 311.)

As the principle involved in this appeal is conclusively settled in this state, a review of the authorities cited by appellant from other states and from the English reports becomes unnecessary.

The demurrer was properly sustained, and the judgment should be affirmed.

BELCHER, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

         GAROUTTE, J., HARRISON, J., McFARLAND, J.

Hearing in Bank denied.