### COPPER KING, Limited, v. WABASH MIN. CO. et al.

(Circuit Court, S. D. California, N. D. April 10, 1902.)

#### No. 36.

**1. MINES—WATERS—RIGHT TO DIVERT.**
Where a mining company has acquired the exclusive right to the use of the water of a certain creek in working its mines, another company has not the right, in developing its mine by means of a shaft near the creek, to cut off and divert the waters flowing into it.

**2. SAME—SHAFT—NOTICE OF CONSEQUENCES.**
Where a mine owner, at the time of commencing a shaft which cut off the waters flowing into a creek which another mine owner had acquired the exclusive right to use, was cautioned by the latter against cutting off such water, he is bound with notice of the consequences of his acts.

**3. SAME—TEMPORARY INJUNCTION—WHEN GRANTED.**
Where, in an action to restrain defendants from diverting water from a creek which plaintiff has acquired the exclusive right to use, the rights of the parties are in dispute, and a temporary injunction will work less hardship than its refusal, it should be granted.

In Equity. On application for temporary injunction.

Myrick & Deering, F. P. Deering, M. K. Harris, and William A. Harris, for complainant.

F. H. Short and W. E. Dunn, for defendants.

WELLBORN, District Judge. The bill alleges, in substance, among other things, that complainant is the owner of the Copper King mine,

situated on a natural water course known as "Dog Creek," in the county of Fresno, state of California, and for a number of years has been and now is engaged in the business of developing and working said mine and extracting ores therefrom, and for more than five years has diverted and appropriated for said business and domestic purposes all of the water of said creek, and by virtue of said appropriation has acquired an exclusive right to the use of said water, and that the whole of it is necessary for the business and purposes aforesaid, and, if complainant should be deprived thereof, its said business would be ruined and destroyed; that one of the defendants, the Wabash Mining Company, about June 20, 1901, commenced to sink a vertical shaft in the ground, about 50 feet from the channel of said creek, and that said shaft is 5 feet wide, 7 feet long, and 60 feet deep, and that by means thereof defendants have diverted and are diverting the water of said creek, and, unless restrained by this court, will continue to divert the same, and thereby cause the complainant great and irreparable injury. The prayer of the bill is that defendants be enjoined from maintaining said shaft, or otherwise diverting said water, etc. Defendants have filed an answer, denying all of said allegations, except as to the sinking of a shaft, and concerning that matter they admit that said Wabash Mining Company, at the time alleged in the bill, did sink a shaft of the dimensions therein stated, about 130 feet from the channel of said Dog creek, but claim that said shaft was sunk in the development of a mining property of said company, situate across the channel of said Dog creek, and deny that by means of said shaft, or at all, respondents have diverted any of the waters of said creek. Various affidavits have been filed, in support of both the bill and answer, by the respective parties. I shall not undertake to review in detail these affidavits, but will simply state, so far as may be necessary to the pending hearing, the conclusions which I have drawn therefrom.

A temporary injunction in this suit would probably work less hardship than its refusal, and, where the title to property is in dispute, such a circumstance is often, on preliminary hearing, determinative in favor of the complainant. 1 Beach, Inj. §§ 307, 308; High, Inj. (3d Ed.) § 1508; Hicks v. Compton, 18 Cal. 206; Real Del Monte Consol. Gold & Silver Min. Co. v. Pond Gold & Silver Min. Co., 23 Cal. 83; Hunt v. Steese, 75 Cal. 620, 17 Pac. 920; Paige v. Akins, 112 Cal. 401, 44 Pac. 666. Defendants, however, contend, among other things, that the shaft complained of was sunk, by the Wabash Mining Company, one of the defendants, in good faith, for the lawful development of its mining claim, without knowledge, actual or constructive when begun, that it would encounter subterranean water, and therefore, if they were to concede all the other matters in dispute, the sinking of said shaft was not, nor will its maintenance be, an actionable injury,—citing Hanson v. McCue, 42 Cal. 303, 10 Am. Rep. 299; Cross v. Kitts, 69 Cal. 217, 10 Pac. 409, 58 Am. Rep. 558; Ditch Co. v. Crane, 80 Cal. 184, 22 Pac. 76; Painter v. Water Co., 91 Cal. 82, 27 Pac. 539; Railroad Co. v. Dufour, 95 Cal. 616, 30 Pac. 783, 19 L. R. A. 92; Sullivan v. Zeiner, 98 Cal. 351, 33 Pac. 209, 20 L. R. A. 730; Hargrove v. Cook, 108 Cal. 79, 41 Pac. 18, 30 L. R. A. 390;

Gould v. Eaton, 111 Cal. 639, 44 Pac. 319, 52 Am. St. Rep. 201; Ocean Grove v. Asbury Park, 40 N. J. Eq. 450, 3 Atl. 168; Trustees v. Youmans, 50 Barb. 319; Haldeman v. Bruckhardt, 45 Pa. 521, 84 Am. Dec. 511; Appeal of Lybe, 106 Pa. 634, 51 Am. Rep. 542; People's Gas Co. v. Tyner, 131 Ind. 280, 31 N. E. 59, 31 Am. St. Rep. 435; and Wheatley v. Baugh, 64 Am. Dec. 721.

This contention requires present settlement, because, if true in fact and sound in law, it forbids a temporary injunction. Is the contention true in fact? W. H. Daily, who for three years has been complainant's managing agent, states in his affidavit that, about the time the shaft was begun, he cautioned the superintendent in charge of said work not to cut the complainant's water flowing in Dog creek. This statement is uncontradicted, and, if the sinking of the shaft has produced the consequences against which the defendants, as shown by said statement, were cautioned, they are chargeable, I think, with prior notice of said consequences. With reference to the law of said contention, two things are to be observed:

First. It is a singular coincidence that, in Trustees v. Youmans, supra, strongly relied on by defendants, the court announces a doctrine subversive of their contention, namely:

"If the defendant's excavation or ditch drew the water from the plaintiff's spring, instead of stopping the flow of water from the defendant's land to such spring, then the defendant would be liable in this action." Pixley v. Clark, 35 N. Y. 520, 91 Am. Dec. 72; Dickinson v. Canal Co., 7 Exch. 282; Cooper v. Barber, 3 Taunt. 99.

Second. While the diversion of water from a well or spring owned by one person, through its percolation into a shaft sunk on the land of another person, may be damnum absque injuria, such is not the case where, to the prejudice of antecedent rights, a like diversion is made from a natural water course. This distinction seems to be recognized in the following extract:

"This is, in fact, the pioneer case of its kind, so far as this court is concerned. There have been cases here in which injunctions were sought to prevent owners of land from digging or trenching or tunneling in their own premises, upon the ground that they were cutting off the subterranean sources of springs and streams, and they have been uniformly decided in accordance with the accepted doctrine as to rights in percolating waters,—the doctrine which defendants contend is applicable here. Those most nearly in point and most relied on are Hanson v. McCue, 43 Cal. 178, Railroad Co. v. Dufour, 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92, and Gould v. Eaton, 111 Cal. 639, 44 Pac. 319, 52 Am. St. Rep. 201. But in none of these cases was there any evidence comparable to the evidence here of an underground stream. Gould v. Eaton, supra, comes nearer to this case than either of the others; but in that case it was found by the lower court that the portion of the water as to which there was any controversy was merely feeding the stream by percolation. And even in that case, which went as far as any case has ever gone in favor of the doctrine that percolating waters are a part of the soil and belong to the owner of the land, it was conceded, if not decided, that no water can be abstracted from a surface stream by tunneling beneath it, notwithstanding the water must pass from stream to tunnel by percolation or filtration through the soil. In this case there is a great amount of evidence tending to prove that the defendants could not take any material quantity of water out of their land without abstracting an equivalent amount from the surface stream; the reason being that the water of the surface stream would necessarily sink into the loose porous material underneath to

fill the voids occasioned by the drawing off of the water from below." City of Los Angeles v. Pomeroy, 124 Cal. 634, 57 Pac. 585.

The reason for the distinction probably is that the waters of a spring or well supplied by percolation are not subject to statutory appropriation or adverse user, while those of a water course may be acquired in either way.

In Railroad Co. v. Dufour, supra, the court hôlds, quoting from the syllabus:

"Where a spring is fed solely by percolating waters, which seep into it from swamp or wet land surrounding the same, and not by any running stream of water, there is no water at such spring to which the right of use can be acquired, either by statutory appropriation or by adverse user, and no action will lie in favor of one who has collected the water at the spring in a reservoir, and transmitted it by a pipe for use, against one who has diverted the water from the reservoir on his own land for irrigation and domestic use."

In Trustees v. Youmans, supra, the court says:

"The evidence tends to show that some of the plaintiffs had used the water in question for a period of more than 20 years, so that the plaintiffs to that extent claim a prescriptive right to its continued use in the same manner they have heretofore enjoyed such use. But reason and authority are alike hostile to such a claim as applied to this case. There can be no prescription where there is no adverse user, and there can be no adverse user without creating a right of action. Now, the use of the plaintiffs in this case was in no sense adverse or hostile to the defendant. It took nothing which he had any right to use or enjoy. It gave him no right of action. He was in no respect injured, nor was any right of his encroached upon. The defendant could not prevent the plaintiffs from using the waters that ran from the springs. Consequently no grant could be presumed from his silence or acquiescence. Chasemore v. Richards, 2 Hurl. & N. 183; Dexter v. Aqueduct Co., 1 Story, 393, Fed. Cas. No. 3,864; Dickinson v. Canal Co., 7 Exch. 282; Roath v. Driscoll, 20 Conn. 533, 52 Am. Dec. 352; Wheatley v. Baugh, 25 Pa. 528, 64 Am. Dec. 721; Frasier v. Brown, 12 Ohio, 311; Haldeman v. Bruckhardt, 45 Pa. 519, 84 Am. Dec. 511."

Most, if not all, of the cases cited by defendants relate to wells or springs, although in Chasemore v. Richards, supra, a leading English case, the diversion was of percolating waters supplying a river. That decision, however, cannot be followed here, since the supreme court of California has declared the law differently, and as follows, quoting from the syllabus:

"The owners of the soil cannot divert any part of the underflow of subterranean water forming part of the stream, whether such water would or would not reach the surface stream of the river; nor can he divert percolating water, if the effect would be to cause the water of the stream to leave its bed to fill the void caused by such diversion." City of Los Angeles v. Pomeroy, supra.

A temporary injunction against the acts covered by the restraining order previously made herein will be issued upon complainant's giving a bond in the sum of $2,500, with good security, to be approved by the clerk of this court.