John E. HERMANSON and Donna M. Hermanson, Plaintiffs and Appellees,

v.

Anton MORRELL and Mathilda Morrell, Defendants and Appellants.

Civ. No. 9250.

Supreme Court of North Dakota.

April 25, 1977.

Vogel Law Firm, Mandan, for defendants and appellants; argued by Benjamin C. Pulkrabek, Mandan.

Kelsch, Kelsch & Tudor, Mandan, for plaintiffs and appellees; argued by William C. Kelsch, Mandan.

SAND, Justice.

This is an appeal taken by Anton and Mathilda Morrell from a judgment of the Morton County district court in which a jury found the Morrells liable to their neighboring landowners, the Hermansons, in the amount of $1,176.00 for removal of lateral support along the property line.

John and Donna Hermanson, appellees in this action, purchased a lot and built a home in Mandan in 1968. In 1970, the Morrells purchased the lot immediately to the south of Hermansons' with a common boundary between them of 120 feet. The block on which these lots were situated had a natural slope toward the southeast, putting the Hermansons' lot at a higher elevation than the Morrells' lot. Natural drainage in the area was toward the southeast.

The Morrells installed a concrete patio and walkway in 1971, and in 1972 put in a lawn, including the laying of sod. During this time they noticed accumulations of mud on their sidewalks and driveway, especially after rain. They also mentioned to the Hermansons that their (Morrells') patio was settling and cracking.

In May or June of 1975 Mr. Morrell, without giving any notice, began excavating along the property line bordering Hermansons' lot. The Hermansons became

aware of this when they returned home one night. The next day Mr. Hermanson talked to Mr. Morrell, who said he was widening his driveway and that it was Mr. Hermanson's responsibility to put in a retaining wall. The excavation was over half completed at that point. After the first cut, Mr. Morrell had the property line surveyed and than brought the cut, which was on a straight vertical plane, within one and a half inches of the property line. The excavation ranged from eight inches to two and a half feet in depth and was approximately 80 feet long.

After excavating, the Morrells waited for five weeks to pour the concrete purportedly to allow the Hermansons to build a retaining wall or take steps to prevent sliding of the soil into the trench. The Hermansons did nothing and the concrete was eventually poured to within one and a half inches of the property line.

In February of 1976 the soil along the cut began to fall into Morrells' driveway. Mr. Morrell, on several occasions, shoveled crumbled earth back onto Hermansons' lawn, presumably in response to Mr. Hermanson's request to put it back "where it came from." The south edge of Hermansons' lot along the property line continued to collapse and they obtained the advice and estimate of a cement contractor, who submitted a bid of $1,176.00 for erecting a retaining wall along the property line to prevent further deterioration of the bank.

Hermansons brought action against the Morrells for damages for removal of lateral support without advance notice and without taking steps to sustain the land, and asked for reimbursement for the cost of restoring lateral support with a retaining wall. Their complaint did not allege any damage to their house or other structure, but only to the soil itself along the south edge of their lot.

The Morrells responded with a counterclaim alleging that over a period of years Hermansons had caused excessive amounts of water to be discharged onto Morrells' lot by reason of the location of Hermansons' downspouts and splash blocks; that the resulting flow of water, mud, and debris onto Morrells' land had damaged their patio, sidewalk, and foundation; and that the excavation and concrete driveway were constructed to divert the flow of such water and thus minimize further damage to their property. The counterclaim requested damages for loss of use and enjoyment of their property and requested that Hermansons be required to restrict the unnatural flow of water onto their lot.

The case was tried to a jury, which returned a verdict for Hermansons in the amount of $1,176.00, and dismissed Morrells' counterclaim. Judgment was entered for Hermansons and following denial of a motion for judgment notwithstanding the verdict or for new trial, the Morrells took this appeal.

The sole issue raised on appeal is the alleged error of the trial court in giving the following jury instruction, which we will refer to as instruction No. 1:

"The liability of an adjoining landowner for the removal of lateral support from his neighbor's land in its natural state is not dependent upon lack of skill or care exercised in making the excavation but is absolute."

Morrells contend that this instruction is contrary to North Dakota law and, even though it was later followed with another instruction setting forth the correct statement of the law, it nevertheless caused the instruction on a material issue to be confusing, misleading, and prejudicial. The later instruction, which we refer to as instruction No. 2, was as follows:

"The right of lateral support is subject to the right of the adjoining landowner to make proper and usual excavations of his own land for the purpose of construction. In making such excavation, the landowner must use:

(a) ordinary care and skill

(b) take precautions to sustain neighbor's land

(c) give the neighbor reasonable notice of his intention to make such excavation."

Morrells claim that giving instruction No. 2 did not correct the error of the previous instruction No. 1 inasmuch as the net effect was to set out two different standards to be applied by the jury.

The instruction No. 2, quoted above, which was accepted by both parties as a correct statement of North Dakota law, is essentially a restatement of North Dakota Century Code § 47–01–18, the statute dealing with lateral and adjacent support. That provision reads:

"Each coterminous owner is entitled to the lateral and adjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction on using ordinary care and skill, taking precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations."

■ We should compare this statute and the instruction based upon it to the common law of lateral support. At common law the right to have the surface of one's land in its natural condition supported by adjoining land is an incident of ownership. Liability for removal of the lateral support from land in its natural state is not dependent upon lack of skill or care exercised but is absolute. Thus, the injured landowner may recover damages without proving negligence on the part of the adjoining owner. *See*, 2 C.J.S. *Adjoining Landowners* § 9, page 12 et seq.; and Powell on Real Property, Vol. 5, § 699, page 284.

This right does not apply where the natural condition of land has been altered so as to require lateral support where none was needed before, or where buildings or other structures have been placed on the land. The rationale is that one landowner should not be allowed to increase the support burdens and limit the range of uses of his neighbor's property by the prior erection of a building on his own land. However, where there are buildings or structures on adjoining land one is liable for damages to them if damage is the result of negligent excavation upon his own land. Thus, where buildings are involved the adjoining landowner has the duty to excavate with reasonable care and skill. *See*, VI–A American Law of Property § 28.36, § 28.40 (A. J. Casner Ed. 1954), and 1 Am.Jur.2d *Adjoining Landowners* §§ 37 through 49.

■ In comparing our statute, § 47–01–18, NDCC, to the common law we note initially that the statute does not refer to buildings or structures, but refers only to land. The term "land" is defined in the same chapter, § 47–01–04, NDCC, in the following manner:

"Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance."

In the absence of clear evidence that the term "land" as found in § 47–01–18 was to have another meaning, it must be given the statutory definition stated above. That definition does not include superstructures or buildings of any kind.

The lateral support statute, § 47–01–18, NDCC (then § 4811, R.C.1905), has been specifically referred to in only one North Dakota case, *Malmstad v. McHenry Telephone Company*, 29 N.D. 21, 149 N.W. 690 (1914), which involved removal of lateral support of a building. The court looked only at the notice provision of the statute in terms of whether failure to give the required notice was evidence of negligence. The court stated that the plaintiff had personal knowledge of the excavation within a few days after work was commenced and if no damage had then occurred he had ample time to take steps for his protection. Thus, failure to give notice was not decisive of the case. An additional problem involved there was whether damage was caused at all by the excavation or whether it was due to poor construction of the building. The court affirmed the district court's grant of a new trial. That case does little to clarify the effect of the statute on common law and, further, raises the question of why the

statute was applied to a situation involving damage to buildings or structures rather than to soil.

The North Dakota Supreme Court in *Truscott v. Peterson*, 78 N.D. 498, 50 N.W.2d 245 (1951), had under consideration a related question of damages where a building fell into an excavation being performed next to the building. The action did not involve adjoining landowners and the court made no reference to § 47–18–01, NDCC, presumably because it did not apply.

An examination of the history of our statute and of identical statutes in other jurisdictions does not settle the matter. Our provision was derived from California Civil Code § 832 as amended in 1873–1874 which contained substantially the same language as now found in our present statute.

 The rule of law is that where a statute is taken from another State and adopted without change the same is taken with the construction placed upon it by the court of last resort of the State from whence the statute came. *See, Cass County v. Certain Lands of Security Implement Co.*, 7 N.D. 528, 75 N.W. 775 (1898). Also, a statute adopted from another State will be presumed to have been adopted with the construction previously placed upon it by the courts of that State. *See, Severtson v. Peoples*, 28 N.D. 372, 148 N.W. 1054 (1914), and *State ex rel. McCue v. Blaisdell*, 18 N.D. 31, 119 N.W. 360 (1909). *See also, Minnesota Baptist Convention v. Pillsbury Academy*, 246 Minn. 46, 74 N.W.2d 286 (1955).

While this rule of law is firmly established, there remains a problem in applying it to the instant case because the California cases which made reference to this statute from which North Dakota derived its statute involved buildings on land which were damaged as a result of excavation; whereas in our situation we have no buildings, but only the land involved.

In *Aston v. Nolan*, 63 Cal. 269 (1883), the California court examined the amended Code section and said:

"It is urged by respondent that section 832 of the Civil Code has imposed upon an adjacent landowner obligations which were not his prior to the adoption of that section. We find, however, no new duty imposed upon one intending to excavate, unless it be the duty of giving reasonable notice of his intention."

The court then set out the statute, emphasizing the word "land" and reviewed the law before the Code section was adopted. It then stated:

"It would seem that by neglecting to give notice to the adjacent proprietor, as required by section 832 of the Civil Code, the person excavating his own lot would become liable for injuries caused by a caving which would not have occurred except for the superincumbent weight of his neighbor's building. This by reason of the section which requires him to give the notice. . . . It is apparent that by giving the notice a person excavating cannot relieve himself of any portion of the prudent care with which he must have conducted the work in the absence of the statutory provision requiring notice. His excavation must be such as would not have caused the soil of the adjacent lot to tumble in had it remained in its natural state—not built upon. But if he gives the notice, and so conducts the work as that the soil, without the weight of the edifice, would not have fallen, his whole duty is performed."

The court went on to say that the purpose of the notice requirement was to draw the attention of the building owner to the excavating in order that he might strengthen his foundation or add other support, and that it would be an unreasonable and excessive burden to impose on the excavator the additional duty of protecting against the burden of his neighbor's building.

The court then made a statement that was often quoted in later opinions:

"Since the enactment of this section of the Code the rights and duties of adjoining proprietors—with reference to the matter in hand—are substantially the

same as they were before, provided notice is given by the party intending to excavate."

It should be noted that the "matter in hand" was a case involving buildings and that the buildings were damaged or destroyed as a result of the excavation. The court pointed out, however, that there was no evidence as to whether or not the soil would have fallen except for the weight of the buildings.

In the same year the California court considered the statutory provision again in *Sullivan v. Zeiner*, 98 Cal. 346, 33 P. 209 (1893), and referred to *Aston, supra,* as holding that the statute imposed no new duty on one intending to excavate unless it were the duty of giving reasonable notice. The issue in the case was whether the plaintiff had acquired a prescriptive right to support of his building which was damaged after the defendant's excavation. The court held he had not acquired such a right and that the statute did not enlarge the right of lateral support given by the common law.

Excerpts of the *Aston* case were quoted again in *Conboy v. Dickinson*, 92 Cal. 600, 28 P. 809 (1891), another case involving a building located on land in question. However, it was admitted by stipulation at trial that the subsidence of soil in that case was not caused or assisted by the weight of the house. With reference to the notice provision, the court said it did not need to consider whether it was complied with since the house admittedly did not contribute to the slide. The court found that in view of the fact that the excavation was 40 feet deep with a steep bank and was completed in March when heavy rains could be expected the defendant had not taken reasonable precautions to sustain the plaintiff's land, and the verdict for the plaintiff was affirmed.

The California Code section referred to in the cases above was again amended in 1931 setting out in detail the conditions to be met for excavating and is now no longer identical to the North Dakota statute.

Montana also has a lateral support statute nearly identical to ours, which was examined in *Neyman v. Pincus*, 82 Mont. 467, 267 P. 805 (1928). In that case the building on the plaintiff's lot fell after an excavation was made by the defendant. The court reviewed the common law of lateral support distinguishing between the land itself and buildings on the land. The court stated that it was not the duty of the person making the excavation to support the buildings of adjoining owners but that duty rests on the owners; and that an action would lie for injury to a building only when excavating was done in a careless and improper manner. After quoting the statute, § 6773, Revised Code 1921, the court said the ancient rule was not abrogated nor were the natural rights of the parties curtailed by the statute and that:

"Indeed, the statute but declares the common-law rule. It refers only to 'land,' and adds thereto only the requirement that the party contemplating excavating his land shall give notice to the other in order that he may be afforded the opportunity for observing the method employed in excavating and protecting his burdens upon the land in its natural state, which the party excavating is not required to protect." *Neyman, supra,* at 810.

Regarding the notice requirement, the court said:

". . . A failure to give the required notice may render the party making the excavation liable for injury to a structure standing on the adjoining lot, even though the lot in its natural condition would not have been affected, on the theory of negligently failing to give the owner of such building an opportunity to protect it. This liability is absolute at least as to those injuries which result prior to the time the adjoining owner obtains full knowledge of the conditions existing." *Neyman, supra,* at 811.

The same statutory provision referred to in California and Montana was also passed in South Dakota and has been referred to

frequently in the context of *Ulrick v. Dakota Loan & Trust Company,* 2 S.D. 285, 49 N.W. 1054 (1891). In *Ulrick,* a verdict was returned for the plaintiff whose building was damaged after an excavation on the adjoining lot by the defendant. One of the errors alleged upon appeal was error in an instruction to the jury to the effect that even if timely notice of the excavation were given the defendant could still be found liable if he excavated in a negligent and careless manner. The court found no error in the instruction and said:

"It is not believed that this section [§ 2784 Comp. Laws] was designed to create a new rule of law. It requires, as the law previously required, that a party about to make an excavation which may affect the lateral support to which his neighbor's land is entitled, shall do it carefully, and with reasonable precaution against damage to his neighbor. Giving timely notice of his intention is not a full discharge of his duty in this respect, however. He must still do the work with ordinary care and skill. The notice is intended to give his neighbor time and opportunity to strengthen his foundations, or otherwise protect himself against damage from such excavation, if done in a careful and skillful manner. Simply giving the notice does not leave him at liberty to do the work in a careless and negligent manner, nor release him from liability for damages resulting therefrom."

In *Hannicker v. Lepper,* 20 S.D. 371, 107 N.W. 202 (1906), the South Dakota court stated that the Code section was in apparent conformity with the common law rule, again in the context of the case alleging damage to a building. It went on to say that the section referred to the word "land" for which the Legislature adopted the common law definition and thus excluded buildings. That definition was:

"Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance."

This definition, it should be noted, follows the approach taken in North Dakota.

Treatises and commentaries reflect an assortment of views on the effect of the lateral support statutes. With reference to the California cases, especially *Aston* and *Sullivan, supra,* see, e. g., *Comment, Adjoining Landowners: California Civil Code Section 832: Lateral Support,* 20 Cal.L.Rev. 62 (1931), where the author said:

"To say that the code section imposed upon the excavator no new duty to safeguard adjacent buildings is not to say that it made no changes in common law liability for damage to land."

In VI–A American Law of Property, § 28.41 (A. J. Casner Ed. 1954), the California Code was footnoted as an example of a statute which gives buildings under stated conditions the same absolute right to lateral support that the common law affords to land in its natural state. In 5 Powell on Real Property, § 702 (1976), Montana, North Dakota, and South Dakota are listed as States with statutes that have eliminated completely the common law absolute liability even for the support of the land in its natural state when the statutory prerequisites are met.

Our Code section was adopted in 1877, so that at least the first several California cases set out previously which were decided before that date must have some effect on construction of our statute in accordance with the rule of adoption set out earlier herein.

■ The interpretation given the statute in those cases is far from clear. At first glance some of the language if read broadly appears to say that the provisions did not alter the common law rule of lateral support, but of critical importance is the fact that *all* of the cases mentioned above from California and from Montana and South Dakota, as well, included a building or structure of some sort on the land. Because the statutes uniformly refer only to "land" and do not make reference, express or otherwise, to buildings or structures it is

uncertain why the statutory requirements, such as notice, were nevertheless applied. We think the language, when read in the context of the given fact situations of those cases, indicates that the common law *with respect to lateral support of buildings* was not altered by the Code provisions.

■ Circumstances similar to those before us now were not presented to the California court. In the case most closely approximating the instant case, *Conboy v. Dickinson, supra,* where it was admitted that the existence of the buildings did not contribute to caving in of the soil, the court concluded that reasonable precautions had not been taken as required by the statute and we find the reasoning on that point persuasive. However, because the case was decided after our adoption of the lateral support provision its interpretation regarding notice was not necessarily a part of North Dakota's adoption of the California statute.

■ The plain language of our statute refers to "land" and we must therefore conclude that the statute refers to the right of lateral and adjacent support as it relates to the soil. It follows, then, that the law of lateral and adjacent support regarding artificial structures could still be governed by the common law. This is consistent with North Dakota Century Code § 1–01–06 which provides that there is no common law in any case where the law is declared by the Code, and with the interpretation placed on the California statute by its courts, insofar as we can discern that interpretation.

■ The statute states that the right of support is "subject to" the right of the adjoining landowner to make excavations providing he does four things: (1) limits the excavation to those that are proper and usual, (2) excavates with ordinary care and skill, (3) takes precautions to sustain the land of the other, and (4) gives reasonable notice to the other of his intent to excavate. We find this language inconsistent with an absolute right of lateral support. A right that is absolute is not "subject to" any

conditions. Furthermore, if absolute liability could attach to the landowner even after he had complied with all the requirements of the statute the provision would have no effect whatsoever. We must interpret it so as to have some meaning, for the law neither does nor requires idle acts. Section 31–11–05(23), NDCC.

■ We interpret § 47–01–18, NDCC, to mean that the right to lateral and adjacent support is not absolute but subject to the condition specified therein, and when any of the enumerated requirements are not met, common law absolute liability applies. Absolute liability is eliminated only when all the statutory prerequisites are met. This imposes on the adjoining landowner in the case of soil a standard higher than that imposed for buildings, that is, the standard of ordinary care, but not so onerous as the absolute standard at common law. Ordinary care and skill along with the other three elements listed in the statute must be met in order to avoid liability for damage to soil.

■ In light of this interpretation we agree with the Morrells that the jury instruction (No. 1) objected to was not an accurate statement of North Dakota law in that it contained the standard of absolute liability. The later instruction (No. 2) containing a restatement of § 47–01–18, NDCC, was in substance correct but did not contain the additional direction as to what the consequences would be if the steps listed in the statute were not taken.

■ However, our review of the record shows that at least two of the requirements of the statute were not complied with by Morrells in connection with the excavation for their driveway project. Nowhere do we find evidence of precautions of any kind taken by Morrells in order to sustain the land along Hermansons' property line. The testimony at trial was devoid of any indication that Morrells added support to the bank or made the cut in a certain manner or at a certain incline; rather it appears that a vertical cut was simply started and completed within three days.

Nor does it appear that notice was given as required by the statute. Hermansons testified that they had no previous notice at all, either actual or constructive, and were not aware of the excavation until it had already commenced and they found Mr. Morrell in the process of digging. Mr. Morrell testified that neither he nor his wife told the Hermansons of their plans to excavate. He suggested, however, that the Hermansons "knew" he was planning the excavation because he had mentioned to them in about 1970 that he was going to dig out that section of his property and pour concrete. Even were we to consider such a conversation four or five years before the fact to be notice, it would not constitute "reasonable" notice and would fall short of what the statute requires.

The result is that even under the more favorable of the two jury instructions Morrells would have been liable. There is no way the facts as presented could be construed to show compliance with the statute. Thus if we were to remand for a new trial and if the same facts were presented the verdict would be the same. We view the record such that if at the close of the evidence Hermansons had requested a directed verdict in their favor on the main claim, the court would have had to grant it based on the evidence before it.

We conclude that while the instruction objected to was erroneous, the error was harmless, for under the facts presented any verdict other than the one returned by the jury would have been unwarranted. See, Cassidy v. Reuter, 63 N.D. 267, 247 N.W. 890 (1933).

This case involved a counterclaim and although facts relating to the counterclaim for the damages caused by alleged excessive water runoff were recited in the brief, counsel for the Morrells limited the issue on appeal to the jury instructions set out above on lateral support. The counterclaim was discussed briefly in oral argument where it was argued that if a new trial were to be granted it would also have to include retrial of the counterclaim, but counsel failed to set out specifics as to where or in what particulars the evidence did not support the jury verdict of dismissal of the counterclaim. Nevertheless, we have reviewed the entire record with respect to the counterclaim and find that there exists ample support for the jury verdict and that there was sufficient evidence to warrant dismissal.

We, therefore, affirm the judgment of the district court awarding damages of $1,176.00 to Hermansons and dismissing the counterclaim brought by Morrells.

ERICKSTAD, C. J., and PEDERSON, VOGEL and PAULSON, JJ., concur.